A. M. Imbrie, Executor of the will of John D. McCune, deceased, *v.* The Manhattan Life Insurance Company, Appellant.

*Insurance—Life insurance—Authority of agent—Taking promissory note for premium where policy requires cash—Ratification.*

A policy of life insurance provided that the premiums should be paid in cash, and stipulated that no provision of the contract could " be changed or waived except by written agreement signed by the president or secretary of the company." The insured gave his promissory note to the agent, and the company subsequently took the note with other notes in settling a balance against the agent. The company claimed that it took the note merely as collateral security for the amount of the balance due by the agent. The agent testified that he took the note as payment from the insured, and that he gave it to the company in part payment of his balance. Before the note matured the company, with knowledge that it was outstanding, notified the insured to pay the premium for the ensuing year. *Held*, that the question as to whether the company had ratified the act of the agent in taking the note was for the jury.

Argued May 7, 1896. Appeal, No. 76, Oct. T., 1896, by defendant, from judgment of C. P. No. 2, Allegheny Co., April T., 1895, No. 396, on verdict for plaintiff. Before Sterrett, C. J., Green, Williams, Mitchell and Dean, JJ. Affirmed.

Assumpsit on a policy for life insurance. Before Ewing, P. J. The facts appear by the opinion of the Supreme Court.

The court charged in part as follows :

[Now the question for you to determine is as to whether or not, regardless of whether or not these notes had been paid, they were taken in absolute payment of these premiums. Ordinarily the presumption is that when a note is taken for a debt or an account that it is simply an extension of time, but it may be taken as an absolute payment, and as a wiping out of the orig-

inal claim or debt. Positive testimony may change that presumption, and the circumstances may change it. There are several circumstances. The testimony of Mr. McKown is that they were taken for these premiums. Let me explain here what absolute payment would be; that an absolute payment wipes out the original debt, and the creditor would not sue on the original consideration, but would sue on the note. For instance, in this case, this question I am submitting to you is: Did Mr. McKown agree to take these notes as an absolute payment of these premiums, and make his recourse and that of the company a suit on the notes, and not a suit for the premium? If the agreement was that they were to take the notes, and if the agreement and understanding and arrangement was that the notes took the place of this debt, paid the premium, then their recourse, if the notes were not paid, was on the notes themselves. Now, you have Mr. McKown's testimony. He says that there was an arrangement at the time that they were to be renewed from time to time—I don't think he stated how long. Now, that might be good as between him and Mr. McCune, it would not be good as to any person taking the notes who did not take them with that knowledge and agreement. Then you have the course of dealing. The company credited Mr. McKown, the agent, with these notes; they charged him with the premiums, and they credited him with the notes, and when one of the notes was not paid at maturity—I will speak of it hereafter—they sent it to him, according to the uncontradicted evidence, for his own, and they charged him with that note as his own, but did not credit him back with the premiums; they did not take off the charge of the premiums. Then in December, 1894, less than a month before the death of Mr. McCune, their agent, authorized thereto, sent formal notices to Mr. McCune that on the 23d day of January, 1895, the third installment would be due; although they now say those notes were not paid. Now, that is not an estoppel in this case, if these notes were not taken in payment; but if they had never been paid and if they had taken from Mr. McCune the third premium, due on the 23d day of January, 1895, they would have been estopped from setting up the nonpayment of these notes; but they did not get that, and these notices did not estop them from setting up that there was no payment of the previous pre-

miums ; but it is evidence, and important evidence, as to how these notes were considered while Mr. McCune was in life, and, so far as appears, not in the near anticipation of the approach of death. Now, that is the first question : Were they taken in absolute payment of the two premiums, or were they not ? and if they were, why then the plaintiff is entitled to recover.] [2]

[There are two other aspects of the case. One is this : If the company ratifying the taking of these notes, knowing how they were taken, saw fit to charge Mr. McKown with them and to take his personal responsibility for them and hold him for them and not cancel the policy, that would be legally a payment, so far as the company is concerned. And you have the course of dealing and you have the testimony that they charged him with the premiums, which have, according to the account, never been credited back to him. There has been no attempt, no proposition to relieve Mr. McKown from an obligation to pay these premiums, and they sent back the six months' note at maturity, charging him with it, adding that much to the balance against him ; and if they saw fit to take him, and let him look out for McCune, make him their debtor for the premiums, letting him take his risks of getting them from McCune, why that is the company's affair.] [3]

[Now, next : Were the notes paid in law ? Let us see how they stood. If you take the testimony of Mr. McKown as correct that the five months' note was for the first premium, let us see where it stood and what was done with it. When it fell due in June—it would be June 22—it does not appear to have been protested, but was sent out here to Mr. McKown to arrange, and it was renewed in part and paid in part, $346 and interest, or discount, whichever you may call it, and the note renewed at four months for $500 ; and that was that much paid on the first premium. When that second note fell due it was again renewed by paying $100, leaving a note for $400, which is here and which the company holds, each renewal going to the company ; and when that fell due it was protested and the company holds that note. That was protested February 28, 1894 ; the last day of February, 1894, that note was protested. Well, now, if that were the first premuim, there was an extension of the time for paying the first premium beyond the year which it was good for, and there was no forfeiture of the policy. And then

they have the second premium, that was due in January, 1894. What was done with that? The history of that, as given, and I recall no testimony to contradict it, is that when it fell due it was sent out here. It was charged to Mr. McKown on the account; his indebtedness was increased to the company, apparently, by the amount of $846, and it was sent out to him as his own, to take at his own risk. There is no crediting up of the premiums to Mr. McKown, and there is no notice to Mr. McCune that his policies are to be canceled. Now, prior to that, Mr. Mc-Cune, acting with their agent, in accordance with what McKown says was the original agreement, had renewed the five months' note once already, and they had taken it and ratified it. That course of dealing would be sufficient to justify Mr. McCune in dealing with Mr. McKown as the authorized agent of the company; or, if it be as McKown says, that it was sent to him to be his, and at his risk, why McKown was the owner and had a right to dispose of it. Mr. McKown says, and the memorandum on the note was, that that note was renewed to him, to his order, by two notes, one for $200 and something, which he took and himself gave to the Equitable Company, in payment of a policy which he had taken out in that company for somebody, payment of the premium, and that has been paid; and the other portion of it, the $600, was given to Bovard, Rose & Co., as I understand, for his, McKown's debt, as he does not know whether that is all paid or not, but it has been partially paid, and Mc-Cune's estate is liable for it if it is not paid. Now, if that be the fact, and you will have to find if it is the fact, that is a payment of the second note, the six months' note, so far as this company is concerned. They could not, under the circumstances, send it back to Mr. McKown, who was acting as their agent at that time, and allow Mr. McCune to give his new notes for it, and then say that McKown had not authority to do that; so that on the third branch of the case, if you find the facts in accordance with this testimony that I have recited—that the first note was given for the first premium, and that it was extended by authority of the company until a time beyond the first year--it is clearly taking that note and its extension for the first premium, and then they have the second premium, if the facts be as testified to, and there is no contradiction of them, it is in law a payment.] [4]

Defendant's point and answer were as follows:

Under all the evidence the jury should find a verdict for the defendant.  *Answer:* Refused. [1]

Verdict and judgment for plaintiff for $5,321.57.  Defendant appealed.

*Errors assigned* were (1–4) above instructions, quoting them.

*Marcus A. Woodward* and *James Otis Hoyt,* for appellant.— The charging of premiums by the company to its agent, when the policies and premium receipts are sent him, or the crediting of the agent by the company of notes or premiums not paid, is a matter wholly between the company and the agent, and has no relation to the company's liability to the insured: Wright v. Equitable Life Assn. Soc., 41 N. Y. Super. Ct. 11; Brown v. Ins. Co., 59 N. H. Rep. 309; Hoyt v. Mut. Ben. Life Ins. Co., 98 Mass. 539; Kerns v. New Jersey Mut. Life Ins. Co., 86 Pa. 171.  An agent has no implied authority to waive any condition with regard to the payment of premiums, in other words, when such authority is claimed to exist, the burden is upon the party claiming the benefit, upon the exercise of such authority, to prove its existence: Cook on Life Ins. sec. 91.

The nonpayment of a note, at maturity, before the death of the insured, is fatal to any claim set up on the policy: Robert v. New England Mut. Life Ins., 2 Disney (Ohio) Rep. 106; 2 Bigelow's Life & Accident Ins. Cases, 141; Catoir v. Am. Life Ins. T. Co., 4 Vroom, 487; Stewart v. Union Mut. Life Ins. Co., 76 Hun, 267; Conway v. Ins. Co., 140 N. Y. 79; How v. Union Mut. Life Ins. Co., 80 N. Y. 32.

*James R. Macfarlane,* for appellee.—The taking of the debtor's individual note is on its face a conditional payment, and the burden of showing a contrary intent is on the party claiming that it is absolute payment.  On the other hand a receipt in full raises a presumption of payment, and the burden of showing the contrary is on the creditor.  The two presumptions stand opposed to each other, and the question whether the note was taken for absolute payment is a question for a jury in the light of all the circumstances: Walker v. Tupper, 152 Pa. 1; Jones v. Shawhan, 4 W. & S. 257; Lycoming Life Ins. **v.**

Bedford, 2 W. N. C. 529; Nat. Benefit Association v. Jackson, 114 Ill. 533; Miss. Valley Life Co. v. Neyland, 9 Bush (Ky.), 430; Goit v. Ins. Co., 25 Barb. 189; Boehen v. Williamsburg City Ins. Co., 35 N. Y. 131; Sheldon v. Connecticut Mut. Life Ins. Co., 25 Conn. 207; Ins. Co. v. Barracliff, 45 N. J. L. 543; Union Cent. Life Ins. Co. v. Taggart, 55 Minn. 95; Michigan Mut. Life Ins. Co. v. Bowes, 42 Mich. 19.

Even if the position taken by the court on absolute payment be incorrect, there can be no question that, if the company made McKown its debtor and held him for the premiums, this would be a payment is exactly in accordance with the decisions of this court, and the testimony is absolutely uncontradicted.

There is no objection for the agent himself to pay the premium to the insurer and make the insured his personal debtor where there is a clause as to cash payment in the policy: Biddle on Ins. 971; Elkins v. Susquehanna Mut. Life Ins. Co., 113 Pa. 386; Boat Yard Co. v. Western Assurance Co., 118 Pa. 415; Continental Life Ins. Co. v. Ashcraft, 18 W. N. C. 97; Lebanon Mut. Ins. Co. v. Hoover, 113 Pa. 591; Scott v. Sun Co., 133 Pa. 322; Universal Fire Ins. Co. v. Block, 109 Pa. 535; Griffith v. N. Y. Life Ins., 101 Cal. 627; Carson v. Jersey City Ins. Co., 43 N. J. L. 300; Miller v. Life Ins. Co., 12 Wallace, 285.

A sale of the note by the company's agent to third parties is payment.

Opinion by Mr. Justice Dean, October 5, 1896:

The defendant company, on the 23d of January, 1893, issued to John McCune of Wilkinsburg, in Allegheny county, four policies of insurance on his life, each in the sum of $5,000; the policies were known as life policies; for two years the insured was to pay in advance an annual premium of $211.50 on each policy, and thereafter, on each an annual premium in advance of $369, for eighteen years or the remainder of his life. This suit is upon only one of these policies; they were all solicited by James C. McKown, who at their date, and for ten years previous, was the agent and general manager of the company for the Pittsburg district. It was agreed between McKown and McCune when the policies were taken, that the premiums on all four for the first and second years should be paid in two

notes of $846, each to the order of McKown, one at five months and the other at six months. These notes were delivered by McCune to McKown, who delivered to him the policies and receipts for the premiums. The notes not being paid in full when due were renewed for the balance by McCune and the old notes returned to him; two renewal notes were indorsed by McKown to third parties; a part of the amount was paid to the holders in his lifetime, and renewals had for the part unpaid; on January 4, 1895, before the expiration of the two years for which the premium had been paid in notes, McCune died. Due proofs of his death were made to the company, and claim made for payment of the policies, which was refused by the company on the ground the premium had not been actually paid as required by the policies. McCune's executor then brought suits, of which this is one, on the four policies. On the trial of the cause the facts as heretofore stated appeared, and there was other evidence as to the authority of McKown as agent, and his course of dealing with policy holders, and the knowledge, as well as ratification, of his acts by the company. The court submitted the evidence to the jury to find:

1. Whether the agent of the company had taken these notes as absolute payment of the premiums?

2. If not at the time taken in payment, or if taken by the agent without authority, did the company, after full knowledge of the transaction, treat them as payment and ratify the act of its agent?

The verdict was for plaintiff, and we have this appeal by defendant, assigning four errors.

The first is to the refusal of the court to peremptorily direct a verdict for defendant. As our ruling on the second, third and fourth assignments disposes of the first, we need give it no further attention. The last three raise the question as to the authority of the agent to accept notes when the policy is issued as actual payments of the premium, and whether, if he had no precedent authority, there was subsequent ratification, and the effect of the evidence tending to prove ratification.

The plaintiff having offered the policies, premium receipts and preliminary proofs of death, the burden was on defendant to show the receipts were for notes instead of cash. For there can be no doubt the proper construction of the contract is that

the insured shall pay the premiums in cash to the agent. And the acceptance of notes and delivery of the policy do not bind the company unless the agent had authority to waive a cash payment or his act was subsequently ratified by his principal. The written stipulation is : " No provision of this contract can be changed or waived except by a written agreement signed by the president or secretary of the company."

While the evidence plainly showed the notes were given, there was much evidence even on side of defendant tending to show that whatever may have been McKown's authority, his acts in reference to this transaction were known to the company, and it by unequivocal conduct approved and ratified them. Mc-Kown was called by defendant and testified in substance that he accepted the notes from McCune in payment of his premiums and had delivered to him the policies. If the evidence had stopped here there would have been just one question for determination. Had the agent authority to waive a cash payment ? The contract or policy to which McCune was a party, and by which he was bound, answered no ; then it would have been incumbent on plaintiff to show that outside the policy the company had conferred on him such authority, or, if not authorized, the company had ratified the act. No precedent authority was shown ; although requested to do so, the company did not produce in evidence the written appointment of the agent showing his authority. But McKown then goes further and states he sent the notes on to the company with many others ; that afterwards differences arose between him and the company, and Mr. Wemple, vice president, came from New York to Pittsburg to adjust his accounts, and brought these notes with others along ; after a settlement and a large balance struck against him as agent, Wemple took these notes with others in part payment of the balance ; Wemple scrutinized all the notes, and selected such as were premium notes. When the notes were about to mature they were sent on to Pittsburg by the company for collection, and when presented bore the indorsement, " For collection on account of Manhattan Life Insurance Co. Wm. C. Frazee, Sec'y." Part of the aggregate amount of the notes was not paid, and the company returned them to McKown, charging him back with the amount unpaid ; he then took new notes from McCune for so much as remained unpaid. The testimony of the vice

president and secretary does not contradict these facts; they state however that the taking of the notes was an individual arrangement between McKown and McCune, not authorized by the company; that they accepted the notes from McKown only as collateral security for the balance due the company from him; that such entries on the company's books as this, "Due Co. Note J. D. McCune," preceded by the number of his policy, was only a method of bookkeeping to accurately keep the account of the company with its agent. While this may be so, the question was still for the jury. Did the company, with full knowledge that the notes were given for premiums instead of cash, accept them as payment, and adopt precisely such course for their collection as if they were the owners of the notes? The credibility of the witnesses and the reasonable inferences to be drawn from the acts of the parties were for the jury. McKown testifies that as between him and McCune he accepted them as payment; assume he had no authority to do so; if the company had knowledge of this violation of authority, took the notes from McKown in settlement of his balance, and looked alone to him for payment; gave no notice to the policy holder that they disclaimed the agent's authority; the jury might infer the company ratified his act in accepting the notes as payment. That part of the notes was not paid at the time of McCune's death is not important; were they accepted as cash and the policies delivered in pursuance of that form of payment is the question; he might have paid in greenbacks, and afterwards the government might have refused to redeem its obligations; the company might have accepted iron at so much per ton as cash, and afterwards have failed to sell for one half the value at which they had taken it. There is a form of contract with reference to notes accepted as premiums, which in some of the cases the courts have enforced; that is where the notes on their face stipulate that if not paid when due the policy shall be void. But that is not this case.

Another significant fact tending to show the company ratified the act of the agent in accepting these notes as absolute payment is the notice as to the third annual premium; that was due the 23d of January, 1895; McCune died the 4th of January, nineteen days before it was due; but in December, 1894, about thirty days before it was due, the company sent

him formal notice to pay this premium on that day, or his policies would be void. At that date with full knowledge that notes had been received for the first two years' premium, had been in the company's possession, part of them paid and part not paid, the insured is notified to pay the premium for the third year, or his policy will be avoided. If McCune had lived until the 23d of January and had paid the premium, that fact alone, under the authorities, would have effectually estopped the company from denying the actual payment of the first premiums. But what is the reasonable inference to be drawn from the notice? Is it not that the policies are now valid, the first two years' premium having been paid, but they will not continue to be so if the third premium be not paid? Not having lived to pay the third year's premium, is not the present defense an afterthought suggested by an otherwise immediate liability for the face of the policies?

We do not see how the learned judge of the court below, on all the evidence, could have withheld this case from the jury, as urged by counsel for appellant. There were one or two inadvertent misstatements of fact as to dates, and one in treating the testimony of one witness as that of another, but these trifling errors could have had no possible influence on the verdict. As to the complaint that the charge was partial and an argument to the jury in favor of plaintiff, it is not well founded. A bare statement of the undisputed facts in this case is itself an argument against defendant's position that McKown's conduct was not recognized or approved by it; and if defendant failed to rebut the inferences warranted by the facts, that was not the fault of the judge, who seems to have fairly submitted the case. It is unfortunate for this defendant that its policy holder died when he had only paid two years' premium on $20,000 insurance, but it is generally supposed that is a risk life insurance companies take. If policy holders all lived until the annual premiums equaled the amount of the policies there would be no risk assumed.

We see nothing in any of the assignments of error warranting a reversal of the judgment; therefore it is affirmed.