RICE *v.* FIDELITY & CASUALTY CO. OF NEW YORK.

1. INSURANCE—BURGLARY INSURANCE—RENEWAL.

In action on burglary insurance policy, whether insured was assured by insurer's agent that the policy had been renewed, was question for jury under contradictory testimony.

2. EVIDENCE—TELEPHONE CONVERSATION—IDENTITY—PRIMA FACIE PROOF.

Testimony by insured that he called insurer's agent at his business telephone number, asked for him, and was assured by person answering that he was insurer's agent, and that insurance policy had been renewed, furnished *prima facie* proof of identity of said agent, although insured did not know his voice.

3. SAME—PRIMA FACIE PROOF OPEN TO REBUTTAL.

*Prima facie* proof of identity of person answering telephone and party to conversation is open to rebuttal.

4. INSURANCE—ASSIGNMENT—CONSIDERATION—BANKRUPTCY.

Whether claim under burglary insurance policy was assigned for valuable consideration before bankruptcy of insured, authorizing him to sue thereon on reassignment to him after his discharge in bankruptcy, *held*, question for jury.

As to necessity and sufficiency of identification as a foundation for admission of a conversation or communication by telephone, see annotation in 6 L. R. A. (N. S.) 1180; L. R. A. 1918D, 720.

5. SAME—PAYMENT OF PREMIUM BY AGENT—AUTHORITY.
   An arrangement between insured and insurer's soliciting agent whereby policy was to be renewed by solicitor's paying premium and later receiving suit of clothes was void in absence of showing of authority, since, if policy was renewed, premium was payable to insurer.

6. WITNESSES—MEMORANDUM MADE BY WITNESS ADMISSIBLE—RE-FRESHING RECOLLECTION.
   A memorandum made by a witness, at the time, if the witness has no present remembrance and his recollection is not refreshed by said memorandum, may, if the witness testifies it was true when made, be admitted in evidence.

7. SAME—AFFIDAVIT MADE BY ATTORNEY FOR WITNESS INADMISSIBLE —REFRESHING RECOLLECTION.
   An affidavit as to a .conversation in witness' presence, prepared by an attorney four months later, is not admissible where witness, testifying eight years later, has no recollection of the conversation and memory is not refreshed by the affidavit.

8. APPEAL AND ERROR—AFFIDAVIT PREPARED BY ATTORNEY—RE-FRESHING RECOLLECTION.
   Error in admitting affidavit prepared by attorney four months after conversation occurred, which failed to refresh recollection of witness testifying eight years later, was reversible, where there was sharp-drawn question of fact, although other witnesses testified to said conversation from memory, since affidavit was well calculated to outweigh testimony of memory witnesses eight years after event.

9. DEPOSITIONS—NOT ADMISSIBLE WHERE WITNESS HAS NO RECOLLECTION.
   Deposition as to a conversation taken about a year thereafter was inadmissible as substantive evidence, where witness, testifying eight years later, coulu not remember said conversation.

10. INSURANCE—RESERVING COMPUTATION OF INTEREST.
    There was no reversible error in the court reserving computation of interest on award, and in entering judgment on the verdict with added interest at legal rate.

Error to Wayne; Murphy (Alfred J.), J. Submitted January 17, 1930. (Docket No. 119, Calendar No. 34,795.) Decided April 7, 1930.

Assumpsit by Philip Rice against Fidelity & Casualty Company of New York, a New York corporation, on an alleged renewed policy of burglary insurance. From a judgment for plaintiff, defendant brings error. Reversed.

*Louis Starfield Cohane* and *Regene Freund Cohane,* for plaintiff.

*Bishop & Weaver,* for defendant.

Wiest, C. J. This is an action upon a claimed oral renewal of a $2,000 burglary insurance policy upon an open stock of merchandise. Plaintiff had recovery, and defendant reviews by writ of error.

In January, 1921, and for many years previous thereto, plaintiff was a merchant tailor with an establishment on Woodward avenue, in the city of Detroit. For the year ending January 29, 1921, he was insured in the sum of $2,000, by defendant, against loss or damage to his merchandise occasioned by the felonious taking thereof from his place of business. Just before the expiration of the insurance, plaintiff added to his stock of merchandise, desired continued insurance protection, and claims that defendant's agents assured him that the policy was renewed for a year. February 7, 1921, plaintiff's place of business was burglarized and much merchandise stolen. Defendant denies renewal of the policy.

The assignments of error, as grouped in the brief for defendant, will be mentioned and considered as we proceed.

It is claimed there was no oral renewal of the insurance policy. James H. Gallagher was employed by defendant as a soliciting agent and paid a salary. Henry V. Upington, of Detroit, was de-

fendant's Michigan manager, authorized to issue
policies of insurance and employ soliciting agents.
Mr. Gallagher took up with plaintiff the matter of
insurance, and, as a condition of reinsurance, re-
quired the placing of bars and screens over the win-
dows and door at the rear of the place of business.
The bars and screens were installed by plaintiff and
inspected and approved by another agent of the de-
fendant. Thereafter, plaintiff claims, Mr. Gallagher
assured him that the policy had been renewed by the
company. This was denied by Mr. Gallagher, and
presented a question of fact for the jury. Defend-
ant claims that, if the claimed assurance was given
by Mr. Gallagher, it was not binding upon the com-
pany, because he was not authorized to make con-
tracts of insurance coverage. Plaintiff also claims
that he telephoned the defendant's Detroit office,
asked for, talked with, and was assured by a person
who said he was Mr. Upington, that the policy had
been renewed and would be delivered. This was
denied by Mr. Upington. The legal point that Mr.
Gallagher had no authority to bind the company is of
little moment if Mr. Upington ratified his acts by
way of assuring plaintiff that the insurance had
been renewed. Plaintiff was not familiar with Mr.
Upington's voice, and this fact presents the question
of whether plaintiff's testimony relative to the tele-
phone conversation had probative value. The call
for Mr. Upington at his business telephone number,
together with the claimed relevant reply to the in-
quiry of whether the insurance had been renewed
and the assurance received, furnished *prima facie*
proof of identity of Mr. Upington. *Theisen* v. *De-
troit Taxicab & Transfer Co.,* 200 Mich. 136 (L. R. A.
1918 D, 715); *Rotter* v. *Detroit United Ry.,* 217
Mich. 686; *People* v. *Thompson,* 231 Mich. 256; *Van*

*Riper* v. *United States* (C. C. A.), 13 Fed. (2d) 961, 968. Of course, such *prima facie* proof was open to rebuttal, and, if met by evidence accepted as credible by the jury, the evidence controlled. If the jury found that the claimed assurance was given by Mr. Upington, who was confessedly vested with authority, then the statements of Mr. Gallagher have importance in connection with the assurance given by Mr. Upington in accord therewith.

Plaintiff, by assignment, turned his chose in action against defendant over to his son, went through bankruptcy without listing the claim as an asset, and, upon his discharge in bankruptcy, his son, by assignment, returned the chose in action, and defendant insists that plaintiff has no interest in the subject-matter of this suit.

The court advised the jury that the chose in action passed to plaintiff's creditors under the bankruptcy law, unless the assignment to the son was for a valuable consideration and without intent to defraud creditors.

There was also evidence of a greater consideration than the $50 mentioned by the circuit judge. The issue so submitted to the jury was all defendant could ask.

Plaintiff testified that Mr. Gallagher, defendant's soliciting agent, agreed to pay the renewal premium to the company, and, when he should deliver the policy, he would have plaintiff measure him for a suit of clothes. This was denied by Mr. Gallagher. In view of this testimony, want of consideration for the renewal of the policy is claimed. If renewal of the policy was made, the premium was due the company, and the claimed arrangement with the agent, in the absence of authority, was void, and the premium was payable to the company. See *Hurley* v. *Watson*, 68 Mich. 531.

June 16, 1921, Helen Oleson made an affidavit that, on February 3, 1921, in plaintiff's place of business, "one Gallagher, describing himself as the duly authorized agent of the Fidelity & Casualty Company of New York, * * * told the said Philip Rice that his policy of insurance with the said Fidelity & Casualty Company of New York was renewed and that, should anything happen between the said date of February 3, 1921, and the date the renewal certificates from said company arrived in Detroit, everything would be taken care of." Helen Oleson was a witness in behalf of plaintiff at the trial, eight years later, and was unable to recall any such conversation, and the affidavit did not serve to refresh her memory. The court, over objection, admitted the affidavit in evidence.

This court has held that a memorandum made by a witness, at the time, if the witness has no present remembrance, and his recollection is not refreshed by his *own* memorandum, may, if the witness testifies it was true when made, be admitted in evidence. *Fisher* v. *Kyle,* 27 Mich. 454; *Spalding* v. *Lowe,* 56 Mich. 366; *Koehler* v. *Abey,* 168 Mich. 113.

The question presented by this record is not solved by the mentioned holdings, for here there was no memorandum made by the witness at or near the time of the alleged conversation, but an affidavit, prepared four months later by an attorney representing plaintiff. The affidavit was at the most a reduction of the relation of a conversation into special form by an attorney for plaintiff. It is a common practice to obtain signed statements or affidavits from persons present at an accident. Such statements and affidavits cannot be received as substantive evidence in case a signer, when called as a witness, testifies to no remembrance of the accident,

even though he avers the truth of his former statement or affidavit.

In *O'Neale* v. *Walton,* 1 Rich. (S. C.) 234, the court recognized the modern rule, sanctioned by our decisions, but pointed out reasons why the ruling in the case at bar cannot be countenanced. In that case the parties had a conversation in the presence of three other persons. About two weeks later, plaintiff therein drew, or had drawn up, a paper containing what he alleged embraced the terms of the contract, as expressed and acknowledged in their previous conversation. This paper was presented to and signed by the three persons present at the conversation for the purpose of preserving the evidence of the conversation.

"On the trial of the case, they were called as witnesses, and the paper was presented to them, for the purpose of exciting their recollection of the facts contained in it."

The witnesses said:

"That independently of the paper itself, they had no distinct recollection of the facts which it contained. * * * The paper did not go to the jury as evidence *per se,* its contents were transmitted through the medium of the witnesses' testimony."

We quote from the opinion:

"The general remark by law writers is, that the writing must have been made at the time of the fact in question, or recently afterwards. Perhaps no general rule can be laid down; but this much may be said, that the paper should contain not only what the writer was conscious of at the time the matter was noted, but should be one emanating from the witness himself, or made out under his immediate direction and of his own free will and accord. Where a

witness had herself noted down the transactions from' time to time as they occurred, but had requested the plaintiff's solicitor to digest her notes into the form of a deposition, which she had afterwards revised, corrected and transcribed, Lord Chancellor Hardwick suppressed the deposition, with strong expressions of indignation. The language of the Lord Chan. may not be uninstructive as to the principle we have under consideration. The case is quoted in (*Doe* v. *Perkins*) 3 T. R. (Durnford & East's) 753; 'should the court connive at such proceedings as these, depositions would really be no better than affidavits.' To be sure, he continued to say, 'a man may use papers at law' in some cases, 'but I have known some judges (and I think I adhered chiefly to that rule myself) let them use only papers drawn up as the facts happened, and all other papers I have bid them put in their pockets; and if any had been offered which were drawn by the attorney, I should have reprimanded him severely.' Prof. Greenleaf quotes with approbation the law on this subject, as it is understood to exist in Scotland. The rule in the courts of that country is, that notes or memoranda, made up by the witness at the moment, or recently after the fact, may be looked to in order to refresh the memory; but if they were made up at the distance of weeks or months thereafter, and still more, if done at the recommendation of one of the parties, they are not admissible. Under this view of the law vindicating itself by its good sense and caution, the paper whose character we are now considering could not have been presented to the witnesses, even for the purpose of refreshing their memory—much less to suffer its contents to go indirectly to the jury. It was drawn up weeks after the transaction it purports to set forth, and was drawn up, too, by one of the parties to the suit; and if not in view of his *mota,* it was to perpetuate evidence obtained *ex*

*parte,* and for his own benefit. It was obtaining, by a prepared and leading examination, the statement of unsuspecting witnesses. I will not, now, go so far as to say, that the paper was not properly allowed to be used, for the purpose of reviving, in the minds of the witnesses, the facts contained in the paper. There seems to have been no objection made to it on that score. The objection is, that the witnesses were allowed to testify to a conversation, from a memorandum made by the plaintiff several weeks after the conversation; although the witnesses could not recollect the facts stated in the paper, after referring to it. The conclusion of the witnesses, as to the truth of the paper, not verified by their memory at the time of the trial, went to the jury. And it is contended that this could be done, on the authority of the *State* v. *Rawls* (2 Nott & McC. 331). That case goes thus far, to allow the writing itself to go to the jury, in all cases where it is made by the witness, at the time of the fact, for the purpose of preserving the memory of it—although at the time of testifying he can recollect nothing further than that he accurately reduced the whole transaction to writing. The principle thus stated, with all its guards fairly maintained, is certainly unobjectionable. It has been adopted and approved by many eminent jurists in the United States. These are the guards against abusing the application of the principle in the case referred to. The facts must be noted at the time they are occurring, by a witness acting under the self-direction of his own mind, and for the purpose of perpetuating evidence. But where facts are noted by a party interested, and then suggested to witnesses, at the distance of weeks after they have transpired, what security would there be under the operation of such a practice? All the advantages of a cross-examination would be taken away, while all the mischief of leading questions would be introduced. All that an

evasive or false witness would have to do, when he was under the ordeal of a cross-examination, would be to take refuge in his paper. And a witness of criminal facility would find his instructions in a paper of a friend, having all the characteristics of a leading examination. It is by no means certain that the witnesses before the court would have subscribed the paper prepared for them, if they had been subjected to the influence of an adversary examination; they certified what they did not think at the time would be used as evidence at all. Certificates of the kind are given with too much facility, and when given, they sometimes control the conscience of witnesses, under the influence of pride of opinion, or from some fear that a different statement might affect their veracity. * * * Those who make their own statements, for the purpose of preserving and maintaining truth, may be trusted under the influence of their own conscience; but when third persons, and those who are interested, prepare the memorial, suspicion will assail, and justice should repudiate it.''

The admission of the affidavit as substantive evidence was error.

Counsel for plaintiff contend that, if the admission of the affidavit was error, the error was harmless because several other witnesses gave the same testimony from memory.

There was a sharp-drawn question of fact upon this, and the affidavit, made four months after the alleged conversation, was well calculated to outweigh the testimony of memory witnesses eight years after the event. The admission of the affidavit constituted reversible error.

The deposition of John Kimpe was taken on behalf of plaintiff about a year after the alleged conversation between Gallagher and Rice. Kimpe was

present at the trial and was called as a witness for plaintiff. Upon his claim of inability to remember any conversation, the court permitted plaintiff to introduce his deposition. The court was in error. The deposition should not have been admitted as substantive evidence.

Plaintiff claimed loss far in excess of the insurance, and the jury awarded the amount of the insurance. The verdict is not without supporting evidence.

There was no reversible error in the court reserving computation of interest upon the award, and in entering judgment on the verdict with added interest at the legal rate.

For the errors mentioned, the judgment is reversed, and a new trial granted, with costs to defendant.

BUTZEL, CLARK, POTTER, SHARPE, NORTH, and FEAD, JJ., concurred. McDONALD, J., did not sit.