## Laubach v. New York Life Insurance Company

*Henninger & Snyder* and *Hyman Rockmaker*, for plaintiff.

*Fox & Fox*, for defendant.

RENO, P. J., May 22, 1933.—The defendant withdrew its motion for a new trial. We are thereby deprived of correcting what we verily believe was "a capricious refusal to believe the credible and [practically] undisputed testimony" offered by defendant: Dzsujko v. Eureka-Maryland Assurance Corp., 109 Pa. Superior Ct. 9. Doubtless, defendant feels that it can safely rest its case on the motion for judgment n. o. v.

Taking up that motion, we shall consider "the testimony not only in a light most advantageous to plaintiff, all conflicts therein being resolved in his favor, but he must also be given the benefit of every fact and inference of fact pertaining to the issues involved which may reasonably be deduced from the evidence": Kish v. Pennsylvania R. R. Co., 309 Pa. 439. Thus, we are bound to say that the evidence establishes that plaintiff was the beneficiary in defendant's policy of insurance issued July 9, 1931, effective as of June 17, 1931; that the insured died on November 12, 1931; that the policy was then in force; that the

quarterly premium of $10.84 due September 17, 1931, was paid before that date; and that (although it is immaterial: Badurka v. Home Life Insurance Company of America, 99 Pa. Superior Ct. 26), the duly authorized agent of the company delivered an official premium receipt for that payment. By the same token, we are obliged to find that the official premium receipt was delivered before the premium was paid in full and that the premium was paid partly in cash and partly in goods. Plaintiff testified that his wife had secured the receipt during the second week in August; that at that time she had paid only $9 and that later, but before the due date of the premium, she gave the agent $1.84 in "Larkin [soap] products." This raises the only question which need be decided upon the motion for judgment n. o. v.

The company contends that the premiums are payable in cash only and that the acceptance of goods by an agent, without authority to do so, is not a valid payment. Undoubtedly, the policy calls for the payment of a quarterly premium of $10.84. A contract for the payment of money can be performed only by the delivery of money: 48 C. J. 595. It provides also that "no agent is authorized to make or modify this contract or to extend the time for the payment of premium or to waive any lapse or forfeiture or any of the company's rights or requirements." Therefore, the agent had no authority to waive the requirement that the premium be paid in money nor to accept goods in lieu thereof. "The rule undoubtedly is that agents of an insurance company, such as the local agent in this case, have no power to waive an expressed condition in the policy": Thomas v. Employers Liability Assurance Corporation Limited of London, 284 Pa. 129, 134. Nor is there any proof of ratification of his act in this respect. On the contrary, the undisputed evidence is that the company had no knowledge of the circumstance and that it treated the policy as lapsed for non-payment of premium. It follows that the delivery of the premium receipt by the agent did not bind the company. "Having no authority to deliver without payment of the premium, it is obvious Thompson's [the agent's] willingness to do so, or to give credit, can create no contract with his principals [insurance company]": Marland et al. v. The Royal Ins. Co., 71 Pa. 393, 396.

There remains for critical examination the proposition we have thus far assumed that insurance premiums are payable in cash only. Thus far, the Pennsylvania appellate courts have not directly ruled upon the question, although it seems to be well established elsewhere. A learned writer has observed that, "Clearly, in the absence of contract provision or other qualifying circumstances, the premium must be paid in money", and after reviewing several cases contra, he declares that "The weight of authority, however, does not seem to invest agents with such extensive authority, it undoubtedly being the rule that an insurance agent has no implied or apparent authority to accept other than money in payment of insurance premiums or assessments": 3 Couch, Cyclopedia of Insurance Law, sec. 602. Even in Pennsylvania, there is the dictum in Marland et al. v. The Royal Ins. Co., supra: "The premiums are the very bread upon which the company feeds. All its sustenance and ability to pay its losses are drawn from this source, and the payment constitutes the only consideration and just title of the insured to demand payment of the loss." And in Imbrie, Exec., v. The Manhattan Life Ins. Co., 178 Pa. 6, 12, it was said that "there can be no doubt the proper construction of the contract is that the insured shall pay the premiums in cash to the agent. And the acceptance of notes and delivery of the policy do not bind the company unless the agent had authority to waive a cash payment or his act was subsequently ratified by his principal. The written stipulation is: 'No provision of this contract can be changed or waived except by a written agreement signed by the president or

secretary of the company.' " See also Clingerman v. Pheasant, 18 Pa. C. C. 203, per Bell, P. J.

The basic case upon the subject is Hoffman v. John Hancock Mutual Life Ins. Co., 92 U. S. 161. In that case, the court assumed, although it doubted, that the general agent of the company had ratified a broker's act in accepting, inter alia, a horse in payment of a premium, and asked (page 164) "What is the legal result?" Continuing, the court, speaking through Mr. Justice Swayne, said:

"Agencies are special, general, and universal. . . . Within the sphere of the authority conferred, the act of the agent is as binding upon the principal as if it were done by the principal himself. But it is an elementary principle, applicable alike to all kinds of agency, that whatever an agent does can be done only in the way usual in the line of business in which he is acting. There is an implication to this effect arising from the nature of his employment, and it is as effectual as if it had been expressed in the most formal terms. It is present whenever his authority is called into activity, and prescribes the manner as well as the limit of its exercise. . . . [Citing cases.]

"Life insurance is a cash business. Its disbursements are all in money, and its receipts must necessarily be in the same medium. This is the universal usage and rule of all such companies.

"Goodwin [insurance broker] had settled his own debt to Hoffman [insured] of $53.67, and had appropriated to himself Hoffman's note of $100.

"If he had the right to take his percentage in such way as he might think proper, this did not justify his taking the horse at $400. Nor, if Thayer [general agent] had expressly agreed to take the horse in payment of the premium *pro tanto*, could that have given validity to the transaction. If the agent had authority to take the horse in question, he could have taken other horses from Hoffman, and have taken them in all cases. This would have carried with it the right to establish a stable, employ hands, and do every thing else necessary to take care of the horses until they could be sold. The company might thus have found itself carrying on a business alien to its charter, and in which it had never thought of embarking.

"The exercise of such a power by the agent was liable to two objections,—it was *ultra vires*, and it was a fraud as respects the company. Hoffman must have known that neither Goodwin nor Thayer had any authority to enter into such an arrangement, and he was a party to the fraud. No valid contract as to the company could arise from such a transaction. This objection is fatal to the appellant's case."

In a later case, In re Palliser, 136 U. S., 257, 263, the Supreme Court discussed the Hoffman case and said: "the only point decided in that case was that an agent of an insurance company could not, unless authorized by the company, accept personal property as money in payment of a premium; no question arose or was considered as to the premium note; and it cannot reasonably be inferred that the learned justice meant to intimate that a premium note was cash or money, before the amount thereof was paid by the insured and received by the insurance company, according to the terms of their contracts."

This rule has been generally, if not universally, followed, as a few well-considered cases decided in other jurisdictions will abundantly show. Thus, in Kamins v. Ætna Life Ins. Co., 258 Mich. 419, 242 N. W. 775, the agent delivered a policy to partners on which the premiums amounted to $134.15. In payment of the premium the agent was given credit upon an account he owed the partners and a note for $100 payable to automobile dealers from whom, with the partners' knowledge, the agent was buying an automobile. The court held that

(p. 421, 422) "this was clearly beyond the authority of the agent, and it was a fraud upon defendant [Citing and quoting Hoffman v. John Hancock, supra]. . . .

"In the case at bar the insureds canceled a personal account of the agent to themselves and knowingly aided in acquiring for him personally $100 worth of automobile, none of which was money nor an equivalent to money to the insurance company when taken, and did not pay the premium."

So, also, in Rice v. Fidelity & Cas. Co. of N. Y., 250 Mich. 398, 230 N. W. 181, "Plaintiff testified that Mr. Gallagher, defendant's soliciting agent, agreed to pay the renewal premium to the company, and, when he should deliver the policy, he would have plaintiff [a merchant tailor] measure him for a suit of clothes." A judgment for plaintiff was reversed and the appellate court held: "If renewal of the policy was made, the premium was due the company, and the claimed arrangement with the agent, in the absence of authority, was void, and the premium was payable to the company."

Along the same line is Cohen v. The New Zealand Ins. Co., Ltd., 100 N. J. L. 110, 126 Atl. 417. A fire insurance agent agreed to take shirts and underwear in payment of the premium. The Court of Errors and Appeals said (pp. 111, 112):

"Now, fire insurance is, broadly speaking, conducted on a money basis. Its disbursements are all in money and its receipts must necessarily be in the same medium or its equivalent to the company when taken, and this all parties dealing with or for the company are presumed to know. If the agent had authority to take the shirts and underwear in payment of the premium, he had a right to take it in coats or any other chattels. If he had authority to accept such a payment from the plaintiff, he had a right to accept it from every other person who desired to take out a policy, and thereby practically force the company into a mercantile business alien to its charter and in which it had never thought of embarking.

"Of course that cannot be. The agent had no such power, and his attempt to exercise it was a fraud as respects the company. The plaintiff must have known that the agent had no authority to enter into such an arrangement and he was a party to the fraud. No valid contract as to the company could arise from such a transaction."

In Wisconsin, a life insurance agent agreed to accept meat for the first premium which he had authority to collect. A recovery for plaintiff was reversed, and the appellate court, reviewing numerous authorities for and against the proposition, concluded that "A careful analysis of the authorities will show that with few exceptions, which are not of sufficient significance to be followed, the idea, that the agent of an insurance company has implied authority to waive payment of premiums on an insurance policy in money and agree to take something in lieu thereof which is neither money nor an agreement to pay money, nor an equivalent to money to the insurance company when taken, has no support": Tomsecek et al. v. The Travelers' Ins. Co., 113 Wis. 114, 119, 88 N. W. 1013.

Likewise in Sovereign Camp, W. O. W., v. Blanks et al., 208 Ala. 449, 94 So. 554, the clerk of a local camp had agreed to accept a cow in payment of the assessment levied by a fraternal beneficial society. The court held that "the clerk of the local camp had no authority to accept the payment of dues in merchandise, chattels, or choses in action, but only in money. . . . The constitution and by-laws contemplated the payment of these dues in money only. The local clerk had no authority to waive these provisions of the constitution and by-laws of the order . . . [Citing cases].

"The agreement of the local clerk to pay these assessments as they fell due was not binding upon the order. There is no pretense that the defendant order, knew of or acquiesced in any such agreement, and nothing upon which could rest either the doctrine of estoppel or ratification."

There is, too, the very interesting case of Thompson v. Equitable Life Assurance Society of the U. S., 199 N. C. 59, 154 S. E. 21. Here, defendant was sued for the return of premiums. The soliciting agent had authority to collect the first premium on policies but no authority to collect subsequent premiums. The first premium amounted to $105. Plaintiff paid the agent $121 in cash and four Liberty bonds of $100 each, a total of $521. Plaintiff was allowed to recover $105. Upon appeal, the judgment was affirmed. The court held (p. 66):

"We have not overlooked the fact in this case that plaintiff made the payment to the defendant's agent partly in money and partly in Liberty Bonds. It is well settled that an agent for an insurance company, authorized to receive money in its behalf in payment of premiums, has no authority to receive anything except money, and that the company is not bound by a payment made otherwise than in money. This principle has no application in the instant case, however, as the judgment is that plaintiff recover of defendant a sum less than the money received by the agent. Plaintiff was denied recovery of any sum on account of the Liberty Bonds."

Upon the whole case, our conclusion is that the agent of an insurance company has no implied or apparent authority to accept goods in payment of a part or the whole insurance premium and that the company is not bound by his act in the absence of proof of express authority, ratification, or estoppel.

Now, May 22, 1933, defendant's motion for judgment n. o. v. is sustained, and the prothonotary is directed to enter judgment for the defendant and against the plaintiff, notwithstanding the verdict; and to this order an exception for the plaintiff is noted.                    From Edwin L. Kohler, Allentown, Pa.