## THE PEOPLE v. EDWARD DOW.

*Criminal law—Evidence—Conversation with one of two respondents.
—Record of signal service station.*

| 64 | 717 |
| 100 | 410 |

64 717
s31NW 597
s 8ASR 873
ι132 4547ι

1. On the *separate* trial of *one* of *two* respondents *jointly* informed against for burglary, a witness was allowed to testify to a conversation had with the respondent *not* on trial, soon after the burglary, in the presence of his co-respondent, during which the witness received money from *both* respondents with which to purchase railway tickets to Rochester, New York, and in which the respondent *not* on trial stated that he did not wish to make such purchase for fear of being arrested as a suspicious character. The testimony as to what was *said* was objected to as incompetent.

    *Held*, that it was competent, the respondent on trial being equally interested in the purchase and use of the tickets, and the conversation being in his presence and hearing.

2. The constitutional provision giving a party accused of crime the right to be confronted with the witnesses against him does not apply to the proof of facts in their nature essentially and purely documentary, and which can only be proved by the original, or by a copy officially certified. *People v. Jones*, 24 Mich. 225.

3. Market reports, and the records of the weather as kept at the asylum at Kalamazoo, have been held competent evidence in civil cases. *Sisson v. Cleveland & T. R. R. Co.*, 14 Mich. 489, 497; *Cleveland & T. R. R. Co. v. Perkins*, 17 Id. 296; *De Armond v. Neasmith*, 32 Id. 231, 233.

4. On a trial for burglary, the record kept by the officer in charge of a signal service station was admitted in evidence to show the condition of the weather on the night in question, the officer tes-

tifying that he did not take the observations, but that the record of same was in the handwriting of one of his assistants, who was not called to testify to their correctness.

*Held*, that the record was improperly admitted without such testimony.[1]

Exceptions from the recorder's court of the city of Detroit before judgment. (Swift, J.) Argued January 27, 1887. Decided February 3, 1887.

Information for burglary. Respondent convicted. Reversed and new trial ordered. The facts are stated in the opinion.

*George X. M. Collier* (*E. S. Grece*, of counsel), for respondent.

*Moses Taggart*, Attorney General, for the People.

MORSE, J. The respondent was tried and convicted in the recorder's court of the city of Detroit of burglary.

On the night of the twenty-sixth of April, 1886, about 3 o'clock in the morning, the house of John B. Moloney, in the city of Detroit, was broken into and entered, and several articles stolen therefrom, among them a gold watch and chain.

The evidence against the respondent tended to show him in company with Thomas Powers that evening and early next morning, and with him at one place where Powers attempted to dispose of the watch stolen from Moloney's residence, and also at one Rosenberg's, where Powers sold the watch.

George Marrow testified that he met Powers and Dow on Woodward avenue, and went to a saloon, where Powers asked him to buy a couple of tickets to Rochester, New York, in the presence of Dow, and said that he did not want to go down town because he was afraid he would be arrested; that he had been arrested in Detroit once before, and was afraid

---

[1] See *Seligman v. Ten Eyck Estate*, 60 Mich. 268 (note 2).

he would be arrested again as a suspicious character, but they couldn't do anything with him but hold him for a couple of days, and he wanted to buy the tickets for that week. Both the respondents gave him money, $15 in all, and Marrow took it, and went and purchased the tickets. Met Powers and Dow at a saloon afterwards, where arrangement had been made to meet, and gave them the tickets.

This testimony as to what Powers said was objected to as incompetent as against Dow, who was having a separate trial. The evidence was competent. The occurrence was soon after the burglary, and Dow seems to have been equally interested with Powers in the purchase of these tickets, and the use of them. He was arrested at Rochester. The conversation was in his presence and hearing, and therefore admissible.

The main objection and exception relates to the admission in evidence of the official record of the weather, as kept in the office of N. B. Conger, signal officer in charge of the signal service station at Detroit.

Mr. Conger was offered as a witness, and testified that he kept a record of the weather in his office, and had the official record with him. He was then asked to state the condition of the weather on the evening of April 26, referring to such record. It was objected to as incompetent. Objection over-ruled. He then testified it was not in his handwriting, but was taken under his supervision. The fact of the record not being in the handwriting of the witness was then made the basis of another objection to its reception in evidence. The court, after some hesitation, allowed the record to be put in evidence.

On cross-examination it appeared that the witness left the signal office at 6 o'clock in the evening, and did not return until the next morning. When he went away, he left his assistant, Mr. Baldwin, in charge of the office. Did not know of his own knowledge that Baldwin or the other assistant remained in the office all night, but supposed one of them

did.   According to this record, the night of the twenty-sixth
rain commenced by meridian time at 7:10 P. M., and ended
at 9:30 P. M., and then commenced again at 9:51 P. M., and
stopped at 11:45 P. M.   On the twenty-seventh, beginning at.
7 A. M., the weather was clear.   No observations were taken
after 11:45 P. M.   This evidence was introduced in rebuttal
of the evidence in regard to rain by the witnesses for the de-
fense, whose testimony tended to show an *alibi*.   The follow-
ing questions were put to Conger on cross-examination :

" *Q*. Can you swear, of your own knowledge, that your·
assistants took these observations on the night in question?
   " *A*. Yes, sir.
   " *Q*. Of your own knowledge?
   " *A*. Yes, sir; I didn't see them, of course.   The observa-
tions are in their handwriting here in this original record."

The counsel for the respondent argues that this record, not
being made by the witness himself, and the persons who·
made it not being sworn, and there being no certainty that
they went outside of the office and took the observations re-
corded by them, is not admissible in a criminal cause.   He
contends that the admission of such record is in violation of·
the constitutional provision that the accused shall have the·
right to be confronted with the witnesses against him.   We·
have heretofore held that this provision does not apply to the·
proof of facts in their nature essentially and purely docu-
mentary, and which can only be proved by the original, or by a·
copy officially certified.   *People v. Jones*, 24 Mich. 225.   But.
that is not this case.   This Court has also held that market.
reports, and the records of the weather as kept at the asylum·
at Kalamazoo, were properly admitted in civil cases.   *Sisson
v. Cleveland & T. R. R. Co.*, 14 Mich. 489, 497; *De Armond·
v. Neasmith*, 32 Id. 231, 233; *Cleveland & T. R. R. Co. v.
Perkins*, 17 Id. 296.

The record of the weather in this case was not one made·
by the witness, or one that he knew certainly to have been·
accurately made in accordance with the actual state of. the·

weather.   It seems to me that the presumption in favor of
the correctness of this record, because it is an official one, if
such presumption can be said to exist under the circum-
stances shown as to the manner of the observations being taken
and the record being kept, cannot be used against the re-
spondent in a criminal case.   It was a vital question upon the
trial whether the testimony looking towards an *alibi* was true
or not, and the condition of the weather that evening was
important in aiding the jury in their determination of that
question.

If Conger had made the record himself, or taken the ob-
servations himself, the evidence would have been compe-
tent; but the respondent was entitled to have the testi-
mony of Baldwin, or the assistant who took the observa-
tions and made the record of the same, and to be confronted
with such witness.   As it was, the presumption arising
from its being an official record only saved it from being
hearsay testimony.   This official statement or record of the
weather, though required to be kept, and therefore an official
document, is not, however, a record of facts which can only
be proved by the original, or a properly certified copy.   The
facts therein stated are facts open to the observation of any-
body, and capable of being established satisfactorily by oral
testimony, or minutes kept by a private person, if such min-
utes refresh his recollection.

The record ought not to have been introduced in evidence
without the presence of the man who made the observations
and the record, on the stand, so that the accuracy of such
record could have been inquired into.

For this error the judgment must be reversed, and a new
trial granted.

The other Justices concurred.