### KOEHLER *v.* ABEY.

1. EVIDENCE—BOOKS—MEMORANDA—WITNESSES.
   A writing or memorandum used to refresh the recollection of a witness is not thereafter admissible as further substantive evidence of the fact: but when the witness has no recollection of the matters shown by the memorandum it is competent evidence if properly proved.

2. SAME.
   Whether the truth of the memorandum was sufficiently guaranteed by the witness, who gave evidence tending to show that he may not have performed the duty which the memorandum evidenced, was a question for the court, and was correctly determined by rejecting the memorandum.

168 MICH.—8.

3. Same—Corroborative Evidence—Official Action.

In an action for personal injuries, alleged to have been caused by defendant's failure to guard the knives of a jointer, as required by an order of one of the State factory inspectors, who kept a memorandum of the order, but was unable to prove the truth thereof sufficiently to admit it in evidence, the court erred in rejecting evidence of the routine duties, and the custom of the witness to keep memoranda of his orders, and as to his habit of making false or correct entries.

4. Same—Reports of Officers—Labor Commissioner.

The court erred in excluding from the evidence a report of the State commissioner of labor, required to be made by the provisions of statute, showing that the witness left an order at defendant's factory to guard the machine; but the report was not competent evidence that such order was, in fact, made, it was evidence only that the memorandum was authentic, and was made in the discharge of the inspector's official duty.

Error to Wayne; Murfin, J. Submitted November 9, 1911. (Docket No. 83.) Decided December 29, 1911.

Case by Frederick Koehler against Daniel W. Abey and Edwin C. Palmer, copartners as the Detroit Wood Pulley Company, for personal injuries. A judgment for defendant on a verdict directed by the court is reviewed by plaintiff on writ of error. Reversed.

*Clarence P. Milligan*, for appellant.

*Walker & Spalding*, for appellees.

The plaintiff was employed by defendant in August, 1907, at work upon a planer or jointer. He was injured, and ascribes his injury to the fact that the machine was not guarded. He alleges in his declaration the duty of defendant to guard and protect the jointer knives, the further duty to comply with the statute requiring the safeguarding of dangerous machinery, and the further duty to comply with an express order of the factory inspector given on or about June 1, 1905. He alleges a violation of each of these alleged duties. The statute (Act No. 113, Pub. Acts 1901; see 2 Comp. Laws, chap.

137) requires an annual inspection of factories and manufacturing establishments by the commissioner of labor, or his deputy, requires that all planers shall be properly guarded when deemed necessary by the factory inspector, requires deputies to make a report to the commissioner of labor of each factory inspected, such report to be kept on file, and a copy thereof to be left with the owner of the establishment inspected, provides that the commissioner of labor shall annually make to the governor a report of such inspection, and for the printing and distributing of such reports.

Upon the trial plaintiff called as his first witness Henry J. Eikhoff, who testified that in 1905 he was employed by the State as a factory inspector, and was so employed for several years, and that during the term of his employment he annually inspected defendant's factory. He was shown a book which he identified as the statistical field book kept by him in the year 1905, and he identified entries therein, made by himself, showing an inspection of the factory June 2, 1905. There was an entry under the head, "Orders Made by Inspector." He testified that the entry refreshed his recollection so that he was able to say that the jointer was not then guarded; but he would not state from recollection that he left orders to put a guard on the jointer. He would not say that he did not leave such an order. He said:

"This factory always had a guard and there was no necessity for ordering a guard, but because of the men for various reasons removing the guards temporarily, when I would go to a place and find a guard removed, I would ask the man in charge of the machines to replace the guard. That does not necessarily follow that an order must be left. But where there is no guard upon a machine, and the work is of such a character that a guard can be used, then we write out an order, giving the name of the company.

"*The Court:* The question is, What did you do in this case? Did you leave orders to put on a guard, or did you not?

"*A.* I don't remember."

This question (whether the witness could state from recollection, refreshed by the record, that he made an order to guard the knives) was several times, and in various forms, repeated, and the witness answered that he did not remember. He was not permitted to read to the jury the notation to which his attention was directed.

"*The Court*: This witness has testified now twice after examining the memorandum that he doesn't remember whether or not he left an order. At least, I so understand your testimony, Mr. Eikhoff.

"*A*. That is right.

"*Mr. Milligan:* It seems to me that the circumstances are these: That, if we can show here this book is in his handwriting, these orders and these memoranda which he testifies are in his handwriting, kept by virtue of the laws of the State of Michigan, we have a right to have that book go in evidence on that proposition.

"*The Court:* I will give you an exception. I don't think so."

The witness was further interrogated:

"*Q*. Do you know whether that is printed?

"*A*. I don't know positively whether it is printed. There is a printed report gotten out by the State.

"*Q*. Are you familiar with that report of that description (showing book to witness)?

"*A*. Yes, sir.

"*Q*. Will you look on page 222 of that report, gotten out by the commissioner of labor, and see whether or not any orders appear there in the printed report? I want to get you upon record upon this proposition. Do I understand you to tell this jury, under oath, that from the memorandum that appears on this book which you have read, that you are willing to tell this court and jury that that does not refresh your recollection as to having left an order there to guard the jointer and shaper knives in that factory?

"*A*. Yes, sir.

"*Q*. You mean to say that, do you?

"*A*. Yes.

"*Q*. Do you know what are done under the law with orders that are left to guard machines of these factories that you visit? * * *

"*A*. Yes.

"*Q.* What are done with them? (Objected to and excluded.)

"*Mr. Milligan:* Why, under the law, if your honor please, those are admissible in evidence.

"*The Court:* I would like to see your authority for it.

"*Q.* Does that refresh your recollection, witness?

"*Mr. Connor:* He has no recollection on that subject.

"*The Court:* If it is an additional memorandum, he may use it.

"*A.* That does not.

"*Q.* Look at it carefully especially down here ( indicating).

"*A.* I see where it is marked.

"*Q.* Does that refresh your recollection?

"*A.* That does not refresh my memory with reference as to whether an order has been left or not.

"*Q.* If it says there that an order was left, would not that refresh your recollection about it? * * *

"*A.* I don't remember.

"*Q.* Does it in any way refresh your recollection?

"*A.* No, sir.

"*Mr. Milligan:* I will offer this book in evidence, if your honor please. It is a public record."

The witness testified that to his knowledge all reports of inspections which were in the office of the commissioner of labor were destroyed in 1906.

"*The Court:* It seems to me, gentlemen, that, under the circumstances now before the court, justice will better be served if the court simply directs a verdict at this time, stating in the direction the admission of counsel that their cause of action is predicated upon this situation; that is to say, that they claim notice was given reciting the facts as they thus far appear, and let the Supreme Court pass upon the question whether or not these books, under these circumstances, are receivable in evidence as substantive proof; that makes the record very short. Do you see any objection to that, Mr. Connor?

"*Mr. Connor:* Not if the plaintiff is willing to concede that his case must fall without such testimony.

"*The Court:* Plaintiff's counsel has very plainly told the court that. I understand there is no question about that, is there, Mr. Milligan?

"*Mr. Milligan:* No."

The court thereupon directed a verdict for the defendant. Except as stated in the charge to the jury, it does not appear what the entries in the field book were. The court stated that upon the field book, under the head, "Orders Made by Inspectors," appeared the notation, "Guard all jointer and shaper knives," and that substantially the same words appeared in the annual report for 1906. Referring to the twenty-third annual report of the Michigan Bureau of Labor, a volume containing also the thirteenth annual report of State factory inspection, at page 180, it appears that under the general heading, "Synopsis of Orders Made by Inspectors," it is written:

"The following are the orders made by the several inspectors while prosecuting their work in the season of 1905. They are given by counties in alphabetical order."

On page 222 is to be found: "Detroit Wood Pulley Co.—Guard all jointer and shaper knives; also emery wheel." The rulings excluding the testimony of Eikhoff as to the contents of the books, excluding his statement of his routine duties, and excluding the field book and the annual report, are the grounds of the errors assigned.

OSTRANDER, C. J. (*after stating the facts*). The learned trial judge expressed his views in the following language:

"It does not seem to me, in view of the fact that the burden of proof in cases of this description is upon the plaintiff, and in view of the fact that the plaintiff must make out a *prima facie* case before there is anything to be submitted to the jury, that a jury can be permitted to guess from documentary evidence originating with a live witness whether or not his * * * recollection is a prompted recollection or not. And, when he is unable to say to you that he gave the notice contemplated by the statute, I don't think that these other documents under the circumstances of this case are receivable in evidence. It appears beyond controversy that at some time (the) commissioner of labor had cleaned house in and about his office, and the records of 25 years' standing and upwards were all destroyed. So there is no way of show-

ing whether the duplicate notice, the notice contemplated by the statute, was ever made; whether there was ever any such notice or not."

The ultimate fact sought to be proved was that an order to guard the planer had been made. The witness testified, in substance, that, with or without the aid of the memorandum, he had no present recollection of the fact.

If he had testified that the writing refreshed his recollection, so that he had a present recollection of the fact sought to be established, the writing would not have been admissible as further substantive evidence of the fact. In such a case it is the testimony of the witness, the recollection, which is evidence, not the document or writing used to refresh recollection.

In testifying that the memorandum or notation made by him in his field book indicated that at the time when it was made the planer knives were not guarded, the witness testified to what is obvious. The memorandum indicates, not only that, but it indicates, also, that the inspector left an order to guard the planer knives. The book was kept for the purpose of recording just such facts as the memorandum imports. It is supplemented by the printed, authoritative report of the commissioner of labor, which indicates that the inspector, witness, pursuant to law, made to the commissioner a report in harmony with the memorandum of fact which was made in the field book.

In *Fisher* v. *Kyle*, 27 Mich. 454, it appeared that the trial court refused to permit an attorney to read to the jury the minutes taken by him of testimony given on a former trial. This court, speaking by COOLEY, J., said:

"Had Draper testified to any present recollection of what these witnesses swore to, he would have been allowed to state what it was. But clearly his minutes, taken at the time, and which he swore were correct, were much less liable to err than any recollection he might have could possibly be. His minutes embodied his understanding of the evidence at the time, and would remain the same, and not become varied in the lapse of time; but his recollection, which would start with the same understanding, was

constantly liable to be more or less perverted and changed, or in material parts obliterated from the memory. It could not possibly, therefore, be more certain than the minutes, and, as every variation from the minutes must render it more uncertain and unreliable, any rule of evidence which would admit the recollection and exclude the minutes must obviously be illogical and unsound. We approve, in this regard, of the case of *State* v. *Rawls*, 2 N. & McC. [S. C.] 334, and *Halsey* v. *Sinsebaugh*, 15 N. Y. 486, which we think lay down the true rule, and explain the origin of some misapprehensions regarding it."

See, also, *Spalding* v. *Lowe*, 56 Mich. 366 (23 N. W. 46); *Lucker* v. *Liske*, 111 Mich. 683 (70 N. W. 421); *Draper* v. *Brown*, 153 Mich. 120, 132 (117 N. W. 213). In *Halsey* v. *Sinsebaugh*, 15 N. Y. 485, referred to by Mr. Justice Cooley, the opinion was written by Judge Selden. He said, in part:

"The learned judge who presided at the trial seems to have followed the rule laid down by Mr. Phillips in his work upon Evidence, which is, in substance, that such memoranda may be used to refresh the recollection of the witness, but can have no force as evidence, unless the witness, after referring to the memorandum, has a present recollection of the facts to which the memorandum relates.

"This was, no doubt, at one time, supposed to be the true rule; and, as such, it was adopted and followed in several cases by the courts of this and other States. *Lawrence* v. *Barker*, 5 Wend. [N. Y.] 301; *Feeter* v. *Heath*, 11 Wend. [N. Y.] 485; *Calvert* v. *Fitzgerald*, Litt. Sel. Cas. [Ky.] 388; *Juniata Bank* v. *Brown*, 5 Serg. & R. [Pa.] 232. But in the case of *State* v. *Rawls*, 2 Nott & McC. [S. C.] 334, this rule was subjected to a critical examination by the Constitutional Court of South Carolina, and was, as I think, proved to have originated in a misapprehension of the cases of *Doe* v. *Perkins* [3 D. & E. 752], and *Tanner* v. *Taylor* [MSS.], cited by Mr. Phillips in its support. The commentary by Nott, J., upon those cases shows conclusively that the memoranda there produced were not the originals made by the witness at the time the events occurred, but mere copies or extracts from such originals taken long afterwards.

"This commentary, which is quoted *in extenso* and approved by Cowen, J., in the case of *Merrill* v. *Rail-*

*road Co.*, 16 Wend. [ N. Y. ] 586 [ 30 Am. Dec. 130 ],
seems to me entirely just and sound; and I entertain no
doubt that Mr. Phillips fell into an error from not discrim-
inating with sufficient care between the original memo-
randum itself and a mere copy.   This subject is treated
with much learning and ability in the Notes to Phillips'
Evidence, by Messrs. Cowen & Hill ( note 528 to p. 290 ),
where the authorities bearing upon it are elaborately
reviewed; and I fully assent to the principle there stated,
' that an original memorandum, made by the witness
presently after the facts noted in it transpired, and
proved by the same witness at the trial, may be read by
him, and is evidence to the jury of the facts contained in
the memorandum, although the witness may have totally
forgotten such facts at the time of the trial.' "

In *State* v. *Rawls*, 2 N. & McC. (S. C.) 331, the rule
is stated in the headnote as follows:

" Where a person who is a witness to a particular
transaction, has made a memorandum at the time of cer-
tain facts for the purpose of perpetuating the memory of
them, and can, at any subsequent period, swear that he
had made the entry at the time for that purpose, and that
he knows from that memorandum that the facts did exist,
it will be good evidence, although the witness does not
retain a distinct recollection of the facts themselves."

In Jones on Evidence (2d Ed.), § 883, the effect of the
testimony identifying the writing, plus the writing itself,
is said to be " the equivalent of a present positive state-
ment of the witness, affirming the truth of the contents of
the memorandum."   And in 1 Wigmore on Evidence, §
747, it is said in analyzing and illustrating the rule:

" The witness must be able now to guarantee that the
record accurately represented his knowledge and recollec-
tion at the time.   The usual phrase requires the witness to
affirm that he ' knew it to be true at the time.' "

Under this rule, the memorandum was competent evi-
dence of the fact recorded therein if its verity as a record
of fact was sufficiently established.   Was the fact that it
was true when made sufficiently guaranteed ?

Upon this point the only doubt which can exist arises

from the testimony of the witness tending to prove that, notwithstanding the record, and what it imports, he may have in fact left no order with the proprietor, but have merely given one to the men, or to one of them employed there, to replace a guard which had been removed. In short, he professed to have a present recollection, which discredits, if it does not deny, the truth of a memorandum which he admits having made in the performance of official duty. I am of opinion that the question whether the truth of the memorandum was sufficiently guaranteed was one for the court to determine, and that, as the record stood, it was not error to exclude the memorandum.

But I am impressed that, under the circumstances disclosed, it was error to exclude testimony of the routine duties of the inspector. The ground of the ruling was that the inspector could not have duties in the premises other than those prescribed by the statute. Now the statute does not say that the inspector shall carry a book, or shall make any memorandum of his acts other than to make a report thereof. But it appears that the witness carried a book in which he made memoranda. His testimony indicates that the book was furnished by his superior for the purpose of making memoranda therein. The heading referred to indicates that he was expected—required—to make a memorandum thereunder in accordance with the fact. Was he also expected to—required to—make a memorandum thereunder not in accordance with the fact which the heading indicates? For example, was it his duty to make such a memorandum as well when he told a workman who had removed a guard placed by the employer to replace it as when he ordered the employer to guard the machine? If it was not a duty, was it a habit of the witness to make such memoranda in either case? And, if it was not his habit, did he occasionally make false entries? It must be kept in mind that the discovery, and not the suppression, of material facts, is the purpose of the court, and that a party litigant has the right to prove material facts by competent evidence. Under the

rule which has been stated, this book was competent evidence of the recorded fact, although the witness had forgotten the fact, if the accuracy of the record was established. It would have the same probative value as the testimony of the witness that upon the occasion in question he ordered defendant to guard the planer knives. *Spalding v. Lowe, supra.* The testimony of the witness tended somewhat to discredit the accuracy of his memorandum, to deny that it meant, when made, what it seems to mean when read in the light of the duty he was performing, and in the light of his statement that it was a memorandum made by him at the time, and that he cannot now tell whether he did or did not leave an order to guard the planer. Counsel should have been permitted considerable latitude in examination of the witness upon the subject of his routine duties to discover whether the witness can now sufficiently guarantee that the memorandum was true when made.

While it was persuasive evidence that the memorandum in the field book was not spurious, but was made at the time indicated in the discharge of the official duty of the witness, the annual report was not, in my opinion, evidence of the fact that an order to guard the planer had been made.

The judgment is reversed, and a new trial ordered.

STEERE, MOORE, McALVAY, and STONE, JJ., concurred.