PEOPLE v. HOBSON.

CRIMINAL LAW—CONSPIRACY—LOTTERIES—PAST RECOLLECTION RE-
    CORDED—MEMORANDA FROM NOTES BY OFFICERS CONDUCTING SUR-
    VEILLANCE.

> Conviction in prosecution for conspiracy to set up a lottery is
> affirmed notwithstanding admission into evidence under past
> recollection recorded rule of typewritten memoranda of police
> officers setting forth detailed observations of defendants' ac-
> tivities over a period of 2 months, prepared at end of each
> day by the officers maintaining the surveillance, after the
> officers had testified that they could not, at the time of trial,
> recall the details of their observations and that the memoranda
> would not refresh their recollections but that the memoranda
> had been accurately prepared each day from notes made at
> scene of observations and from their memories of what had
> occurred that day, although the memoranda were not exact
> copies of such notes that had since been destroyed, and the
> memoranda had been prepared for the express purpose of ob-
> taining evidence to secure convictions.

KAVANAGH, SOURIS, and OTIS M. SMITH, JJ., dissenting.

Appeal from Muskegon; Beers (Henry .L.), J.
Submitted June 14, 1962. (Calendar No. 52, Docket
No. 49,037.) Decided February 6, 1963.

Roscoe Hobson, Jr., Bertram Hobson, Cleo
Roberts, Charles Cofield, and Moses Hussey were
convicted of conspiracy to violate the gambling laws.
Affirmed.

REFERENCES FOR POINTS IN HEADNOTE
11 Am Jur, Conspiracy §§ 37–43.
20 Am Jur, Evidence § 946.
Refreshment of recollection by use of memoranda or other writings.
    125 ALR 19.

*Frank J. Kelley*, Attorney General, *Eugene Krasicky*, Solicitor General, and *Harry J. Knudsen*, Prosecuting Attorney, for the people.

*Stribley & Rude* (*Arthur M. Rude*, of counsel), for defendants.

DETHMERS, J. Defendants appeal from convictions of conspiracy to set up a lottery, or the so-called numbers or policy racket, and sentences imposed therefor.

The only trial error claimed is the admission into evidence of typewritten memoranda setting forth detailed observations of defendants' activities, prepared at the end of each day by the police officers who then were maintaining a surveillance of defendants and their activities for a period of approximately 2 months, after those officers had testified that they could not, at time of trial, recall the details of their observations from day to day, that the memoranda would not refresh their recollections, but that the memoranda had been prepared accurately by them each day from notes they had made at the scene of the observations and from their memories of what had occurred that day, although the memoranda were not exact copies of such notes, which since had been destroyed.

The people contend that the memoranda were admissible to prove the conspiracy under the rule of evidence commonly referred to as "past recollection recorded". To this defendants say in their brief:

"Let us examine this theory or rule of 'past recollection recorded' and see if it really fits this case. A record of past recollection has been admitted as a general rule when that record qualifies in certain particulars, to-wit: (1) When the record is the original, unaltered paper, (2) preferably prepared by the witness himself at some prior, and rather

remote, date (3) containing facts shown to be true when recorded (4) made contemporaneously with or near the time of the transaction recorded, and (5) containing facts which remain unrecalled by the witness after attempting to refresh his memory from the document or record (20 Am Jur, Evidence, § 946, p 798)."

Defendants then go on to say that the memoranda seem to qualify under the above criteria, but suggest that they are, nonetheless, inadmissible because of the motives of the police officers, who were not disinterested persons, but who prepared the memoranda for the express purpose of obtaining evidence to secure convictions. In *Germiquet* v. *Hubbard,* 327 Mich 225, 232, 233, this Court said:

"Under the prior holdings of this Court it may be regarded as settled law that under proper circumstances a record of a past recollection, authenticated by proof, is competent. *Baumgarten* v. *Tasco,* 312 Mich 161, must be regarded as so holding. In *Koehler* v. *Abey,* 168 Mich 113, the Court quoted with approval from the headnote to the opinion of the supreme court of South Carolina in *State* v. *Rawls,* 2 N & McC (SC) 331, as follows:

" 'Where a person, who is a witness to a particular transaction, has made a memorandum, at the time, of certain facts, for the purpose of perpetuating the memory of them, and can, at any subsequent period, swear that he had made the entry at the time for that purpose, and that he knows from that memorandum that the facts did exist, it will be good evidence, although the witness does not retain a distinct recollection of the facts themselves.'

"In *Rice* v. *Fidelity & Casualty Co. of New York,* 250 Mich 398, 403, it was said:

" 'This Court has held that a memorandum made by a witness, at the time, if the witness has no present remembrance, and his recollection is not refreshed by his *own* memorandum, may, if the witness

testifies it was true when made, be admitted in evidence. *Fisher* v. *Kyle,* 27 Mich 454; *Spalding* v. *Lowe,* 56 Mich 366; *Koehler* v. *Abey,* 168 Mich 113.' "

While *Germiquet* and *Rice* and the cases cited therein are civil cases, there is no reason to hold the rule of evidence in this respect to be different in criminal cases. This may be concluded from *People* v. *Johnson,* 215 Mich 221, in which a stenographer who had taken notes of an oral statement or confession of defendant and transcribed the same, was permitted to read the transcript into the record, although in that case it was treated as a matter of refreshing the witness's recollection. See, also, from other States, the following criminal cases: *People* v. *Gardner,* 147 Cal App 2d 530 (305 P2d 614); *State* v. *Bradley,* 361 Mo 267 (234 SW2d 556); *Loose* v. *State,* 120 Wis 115 (97 NW 526); *Hall* v. *State,* 223 Md 158 (162 A2d 751); *Kinsey* v. *State,* 49 Ariz 201 (65 P2d 1141, 125 ALR 3); *Rumely* v. *United States* (CCA2), 293 F 532; *People* v. *Randazzio,* 194 NY 147 (87 NE 112).

In *Schoborg* v. *United States* (CCA 6), 264 F 1, certiorari denied in 253 US 494 (40 S Ct 586, 64 L ed 1029), detectives, by use of a planted microphone, overheard conversations in the shop of one of the defendants convicted of disloyal activities in time of war. For the express purpose of securing evidence against the defendants, they made notes of what they overheard and at the end of each day prepared reports therefrom. They testified that they had no independent recollection, in detail, of what they had heard but that they knew their notes were correct and that the reports made therefrom were accurate. These were held admissible.

Defendants' objections that the officers were prompted by motives to secure convictions and that they only recorded in the memoranda certain of de-

fendants' daily activities which seemed to prove the crime, but failed to record all of the defendants' other actions each day, are effectively met and disposed of in *Schoborg*. It was there held that it was no valid objection to the notes or memoranda that they contained only matters overheard which pertained to the crime charged, and nothing about conversations overheard about other subjects, the court saying that the latter would have been inadmissible because immaterial. There, too, the detectives made the notes and reports for the sole purpose of obtaining evidence to be used against defendants. The motives of the officers in preparing the memoranda bear on the credibility but not on the admissibility thereof. The judge, as trier of the facts in this case, having been duly apprised of the motives, purpose and manner of the surveillance and making of the notes and memoranda, the matter was properly before him to determine the credit to be given thereto.

As for defendants' objection that the memoranda were not the best evidence but secondary because they were mere copies of the officers' original notes, we observe that in *People* v. *Johnson, supra,* the stenographer was permitted to read into the record the paper which she testified was a correct transcript of her notes. We think the testimony of the officers that the memoranda constituted a correct record, although not exact copies, of their notes together with matter drawn from their memories, qualified them for admission and consideration by the judge as to credibility and accuracy. They were prepared by officers who had personal, firsthand knowledge of the matters recorded in the memoranda and the fact that, in the preparation, the officers referred to their notes to supplement their memories, did not render the

memoranda secondary evidence and make them inadmissible.

Affirmed.

CARR, C. J., and KELLY, J., concurred with DETHMERS, J.

BLACK, J., concurred in result.

SOURIS, J. (*dissenting*). The only evidence of conspiracy upon which these convictions were based consisted of a single exhibit of 53 typewritten pages prepared by 3 State police officers as an interoffice memorandum to their superior of their observations of the five defendants' activities on 18 days extending over a 2-month period. A typical page from the exhibit, admitted in evidence over defendants' objections, appears below verbatim:

"MICHIGAN STATE POLICE
"Interoffice correspondence

"Date: 7-21-59
"Subject: Complaint 7-103-59  File 2.10
"To: Det. Lt. Carl W. Robinson.
"2:30 PM: CLEO ROBERTS, driver, RB 89-47, parked and entered 2516 Glade St., Muskegon Hts. Discontinued observations.
"2:35 PM: JD#2, Bertram Hobson, driver, RC 11-12, departed from 20 Muskegon St., Muskegon.
"2:37 PM: JD#2, Bertram Hobson, driver, RC 11-12, parked and entered 859 Cedar St. At this time observed colored male, driver RE 77-94, parked in front of 859 Cedar and he entered 859 Cedar right behind JD#2, Bertram Hobson. This is the same colored man seen on 7-16-59 that entered 859 Cedar. Hereafter this colored male will be referred to as JD#3, Charles Cofield. Discontinued.
"2:53 PM: CLEO ROBERTS, driver, RB 89-47, parked and entered 24 Muskegon St.

"3:00 PM: CLEO ROBERTS, RB 89-47, parked and entered 806 Spring St.

"3:05 PM: CLEO ROBERTS, RB 89-47, parked and entered 859 Cedar St.

"3:20 PM: Roscoe Hobson, Jr, driver RA 32-90, departed from 20 Muskegon St. and was followed to 859 Cedar St. where he was met at the door and admitted by CLEO ROBERTS.

"3:53 PM: ROSCOE HOBSON JR, driver RA 32-90 and CLEO ROBERTS, driver, RB 89-47, departed from 859 Cedar St.

"3:55 PM: ROSCOE HOBSON JR. RA 32-90, parked and entered 20 Muskegon St., left pants pocket bulging. Discontinued.

"4:10 PM: RC 11-12 Chev., now observed at 2815 Strand Rd.

"4:27 PM: RA 32-90 Chev. now observed parked at 556 E. Western, Muskegon.

"Respectfully submitted,
/s/ STEVE GALAT
Det. Steve Galat
Racket Squad".

Each of the officers who contributed his typewritten observations to this exhibit identified the pages he prepared. Each then testified that he accurately recorded thereon his observations of defendants at the end of each day from notes made during the day and from memory, that he had no independent recollection of any of the recorded events, and that the exhibit did not refresh his recollection thereof. Over defendants' objections, the exhibit was admitted in evidence.

We have in this State admitted evidence in civil cases under the rule of past recollection recorded, but never have we admitted such evidence on that theory in a criminal case. *People* v. *Johnson*, 215 Mich 221, cited by Mr. Justice DETHMERS, does not (as he seems to acknowledge) authorize what was here done. In

that case defendant's oral confession was admitted in evidence by allowing a stenographer to read to the jury her transcribed notes thereof. The court's opinion discloses that, inexplicably, it did not even consider the contents of the transcript as past recollection recorded but, instead, approved the use made of it as a means of refreshing the stenographer's recollection of what the defendant had stated.

Some State and Federal appellate courts have approved admission in criminal cases of documentary evidence as past recollection recorded. However, virtually none of such courts has analyzed the practical effect of the use of such evidence upon the criminal defendant's constitutional rights to be confronted with the witnesses against him. Sixth Amendment, United States Constitution, and article 2, § 19, Constitution 1908. See, also, CL 1948, § 763.1 (Stat Ann 1954 Rev § 28.854). While this issue was not argued or briefed on this appeal in any manner helpful to the Court, it would seem to me that we have an obligation to examine the constitutional implications involved in our majority's extension of an evidentiary rule we have followed in civil cases, *where the constitutional and statutory rights of confrontation are not applicable,* to criminal cases, *where such rights are applicable.*

The right of confrontation has meaning only to the extent it accords a defendant in a criminal case an opportunity to cross-examine the witnesses against him.[1] In *People* v. *MacCullough,* 281 Mich 15, while acknowledging the trial court's right to

---

[1] *People* v. *Pickett,* 339 Mich 294 (45 ALR2d 1341), certiorari denied 349 US 937 (75 S Ct 781, 99 L ed 1266) ; *People* v. *Johnston,* 328 Mich 213 (20 ALR2d 1001) ; *People* v. *Hunley,* 313 Mich 688; *People* v. *Moore,* 306 Mich 29, certiorari denied 321 US 787 (64 S Ct 783, 88 L ed 1078) ; *People* v. *Lewis,* 294 Mich 684; *People* v. *Myers,* 239 Mich 105; *People* v. *Schepps,* 217 Mich 406 (21 ALR 658) ; *People* v. *Goodrode,* 132 Mich 542; *People* v. *Dow,* 64 Mich 717 (8 Am St Rep 873) ; *People* v. *Lambert,* 5 Mich 349 (72 Am Dec 49).

limit cross-examination on collateral matters, this Court declared that cross-examination on facts in issue or on relevant facts was a right and not just a privilege. See, also, *People* v. *Koukol,* 262 Mich 529 (87 ALR 878); *People* v. *McKernan,* 236 Mich 226; and *Alford* v. *United States,* 282 US 687 (51 S Ct 218, 75 L ed 624). We have approved the use of a witness' prior testimony taken at the preliminary examination where a witness gave conflicting testimony during the trial or where a witness giving such testimony at preliminary examination was unavailable for trial,[2] but *only* after consideration of the defendant's rights of confrontation and conclusion that such rights would not be violated because the defendant had full opportunity at the preliminary examination to cross-examine the witnesses whose prior testimony was so used. *People* v. *Case,* 105 Mich 92; *People* v. *Droste,* 160 Mich 66; and *People* v. *Pickett,* 339 Mich 294 (45 ALR2d 1341). See, also, *People* v. *Sligh,* 48 Mich 54.

Today, it is proposed that we permit use of a memorandum, as a substitute for testimonial evidence, absent opportunity for cross-examination of its authors at the time it was made. Although it is true that the authors of the memorandum were brought "face to face" with the defendants when it was offered at the trial, such "confrontation" has little constitutional significance if cross-examination is effectively thwarted. Dean Wigmore focused attention upon the meaning of the right of confrontation when he said:

"The opponent demands confrontation, not for the idle purpose of gazing upon the witness, or of being gazed upon by him, but for the purpose of cross-examination, which cannot be had except by the direct and personal putting of questions and obtaining

[2] See CL 1948, § 768.26 (Stat Ann 1954 Rev § 28.1049).

immediate answers." 5 Wigmore on Evidence (3d ed), § 1395, p 123.

(See, also, *State* v. *Heffernan,* 24 SD 1 (123 NW 87, 25 LRA NS 868, 140 Am St Rep 764.)

That the defendants did have a right (of sorts) to cross-examine the authors of the memorandum, and exercised that right, does not in itself answer the question whether their right of cross-examination was, under the circumstances, exercisable fully. The practical ineffectiveness of such "right" of cross-examination was commented upon by Professors Maguire and Quick in 3 Howard L J 1, "Testimony: Memory and Memoranda" (p 8):

"It is self-evident that under these circumstances one favorite hunting ground of the critical cross-examiner is closed off. He cannot pointedly and specifically blaze away at the details of fading memory between the time of perceiving and the time of writing or verifying. This is no inconsiderable handicap, since this period may stretch from hours to days or even weeks, quite enough to dull the first fine glow of memory. Neither can the cross-examiner effectively undermine an assumption that the unremembering witness fairly perceived the particular event. Questioning about the circumstances of observation will usually run into the same blank wall as questioning about the matters observed. General propensities and habits of observation and recollection on the part of the witness can be explored, but that is about all."

When we turn to the opinions of other courts for the benefit of their analysis of this problem, we find that it has been analyzed infrequently. Of the criminal cases from other jurisdictions cited by Mr. Justice DETHMERS, most of them involve application of the rule for refreshing a witness' present recollection and not the rule sought to be invoked here. In only 2 of the cases in which the rule of past recollection

recorded is applied, is there any discussion of the effect application of the rule has upon defendant's right of cross-examination. *Hall* v. *State*, 223 Md 158 (162 A2d 751), incorporates (pp 173, 174) that portion of the opinion in *Kinsey* v. *State*, 49 Ariz 201 (65 P2d 1141, 125 ALR 3), in which the subject is discussed. There, the Arizona supreme court said (pp 219, 220; 125 ALR 13, 14) that when a witness whose memorandum is admitted in evidence as past recollection recorded is cross-examined, inquiry may be directed to the witness' honesty and integrity and to his ability to observe accurately at the time the incident occurred, just as such inquiry is normally made of other witnesses. The only limitation the Arizona court acknowledged was that the witness could not be cross-examined upon his accuracy of recollection of the past event, but said that was unnecessary because the witness would have already denied he had any independent recollection of such event. We may concede that, abstractly considered, of course the Arizona court was right; such a witness' honesty and integrity and his ability to observe accurately at the time a past event occurred may still be the subject of *some* cross-examination. However, because a criminal defendant's right to cross-examine an adverse witness is inseparably a part of his constitutional right of confrontation, any qualitative diminution of cross-examination commands our concern.

When the police officers were examined, on direct examination, they testified that their typewritten daily reports were accurate when made, but that they had no recollection, independent or revived, of the multitudinous events reported. Under such circumstances, how effectively could they be cross-examined as to their honesty and integrity and their accuracy of observation when all questions put to them had to be barren of any reference to the legally damning

fact issues recorded on the exhibit because they claimed no recollection of them? Cross-examination regarding their honesty and integrity in their daily affairs, or even lack thereof, misses the mark unless it is related directly to the observations claimed to have been made of the defendants. However accurate the police officers claim their observations were, denying defendants the right to test that accuracy of observation by inquiry directly related to the events claimed to have been observed makes of defendants' asserted right of cross-examination a mockery of constitutional right. Yes, technically defendants could still cross-examine the witnesses against them, but they could make no inquiry of them regarding the facts by which defendants stand convicted. The truth is that upon admission of the exhibit in evidence, the police officers no longer were the witnesses against defendants,—the exhibit itself was the mute witness they confronted but could not cross-examine.

I cannot avoid the conclusion that what was here done violated these defendants' constitutional rights to be confronted with the witnesses against them, having been denied the right effectively to cross-examine the police officers with specific reference to the evidentiary facts contained in the exhibit. It may be suggested that such denial or restriction of defendants' rights of cross-examination is no different from, nor greater than, the denial of cross-examination whenever evidence is admitted in a criminal trial as one of the exceptions to the hearsay rule, such as, for example, dying declarations, shop book entries, official reports, et cetera. Whatever the constitutional sanction (see 5 Wigmore on Evidence (3d ed), § 1397 *et seq.*), evidence admitted as within the hearsay exceptions is generally limited to that which is necessary, absent availability of the evidence from the declarant himself, and where the probability of its trustworthiness is high, based upon a showing of

the declarant's motivation.and his ability to perceive, remember and narrate. Morgan, The Relation Between Hearsay and Preserved Memory, 40 Harv L Rev 712.

On the other hand, the rule by which past recollection recorded is admitted in evidence is not limited to evidence which is *inherently* trustworthy. See *Germiquet* v. *Hubbard,* 327 Mich 225, as quoted in Justice DETHMERS' opinion, where the rule as taken from *State* v. *Rawls,* 2 N & McC (SC) 331, and *Rice* v. *Fidelity & Casualty Co. of New York,* 250 Mich 398, requires only that the witness testify that the past recollection was accurate as then recorded. Such bare testimonial assertion, I would presume, may be overcome by the circumstance of the record's creation, thus affecting its weight at the very least; but, we are told, it does not affect its admissibility.

In this case, the memorandum admitted as past recollection recorded and the circumstances of its creation and use were so questionable that even if the rule is generally applicable to criminal cases, the exhibit should have been excluded on the ground that its trustworthiness for accuracy was not adequately established. For example, although made at the end of each day of surveillance, the typewritten sheets constituting the exhibit were not the original record of the officers' perception. The officers testified that they made notations of their observations on miscellaneous scraps of paper which were destroyed at the end of each day after the cryptic notations contained thereon were transferred by them, as supplemented by their memory, to the typewritten sheets. No explanation was offered for destruction of the original notes. (For an example of the logical extreme to which we may be heading, see *People* v. *Betts,* 272 App Div 737 [74 NYS2d 791].)

Furthermore, although it is said in the briefs on appeal that the memorandum was prepared at the

end of each day, this is not entirely accurate. The fact is that 3 of the defendants were identified on the typewritten reports as they were made each day, by number and not by name, because their names were then unknown to the investigating officers. The names of the unknown defendants were inserted at the conclusion of the investigation at the time of the arrests when the officers discovered the identities of the 3 previously unidentified subjects of their investigation. The investigation was climaxed by the arrest of the defendants 2 months after it had begun.

Next, defendants state, and I agree, that it is somewhat incredible that each of the police officers at the trial, 27 days after completion of the investigation, denied having any recollection, independent or revived, of any of the events preceding the last day of the investigation which were so meticulously recorded upon the exhibit. It could not be expected reasonably that they should remember each detail but it strains credulity, even judicial credulity, to believe under these circumstances that none of such recorded facts could be recalled. Particularly is this true when, as here, all 3 of the officers who participated in preparation of the memorandum testified in great detail about the subsequent arrests, and the searches and seizure of evidence, apparently without even the benefit of memoranda to aid their detailed recollection of the events which occurred after the forgotten surveillance.

To me, one of the most disturbing facts about the memorandum admitted in evidence below is that it was admittedly prepared for use as evidence. Unlike exceptions to the hearsay rule, such as shop book entries, autopsy reports and the like, this exhibit does not have the protective characteristic of trustworthiness found in records and documents prepared for other use and only incidentally found pertinent to litigation. Without intending to suggest that the

exhibit involved in this case was manufactured for misuse at the trial of these defendants, it is quite apparent that if we adopt for general use in criminal cases the evidentiary rule of past recollection recorded, without excluding therefrom documents made expressly for use as evidence, we will encourage abuse of the rule. Again, reference should be made to *People v. Betts, supra,* for a candid description of such abuse.

· Finally, the only evidence in this record which ties together these 5 defendants in a conspiracy is found in the challenged memorandum. This is, perhaps, an extreme case, because of that circumstance, for determining the applicability of the rule of past recollection recorded to criminal cases, but it serves well to highlight the danger inherent in the use of that rule in such cases.

I would reverse these convictions. First, they were based upon the admission of evidence in violation of defendants' constitutional rights of confrontation,—to the extent defendants were deprived of their right effectively to cross-examine the witnesses whose extrajudicial testimonial recollections were used against them. Second, even assuming *arguendo* that there is no constitutional bar to the use in a criminal case of past recollection recorded, the memorandum exhibit admitted in evidence in this case so lacked the minimum safeguards of trustworthiness normally required for admission of extrajudicial evidence that it should not have been received.

KAVANAGH and OTIS M. SMITH, JJ., concurred with SOURIS, J.

O'HARA, J., took no part in the decision of this case.