PEOPLE v. BRACY.

1. SEARCHES AND SEIZURES—SEARCH WARRANT.
   A magistrate may not issue a search warrant without probable cause, supported by oath or affirmation (Const 1963, art 1, § 11; Const 1908, art 2, § 10).

2. SAME—SEARCH WARRANT—PROBABLE CAUSE.
   A magistrate is required to find probable cause for the issuance of a search warrant from the facts or circumstances presented to him upon oath or affirmation, mere affirmation of belief or suspicion being insufficient (Const 1908, art 2, § 10).

3. SAME—PROBABLE CAUSE—EVIDENCE.
   The term *probable cause*, as required to be found by magistrate before issuing a search warrant, although difficult to define, means less than evidence which would justify condemnation.

4. SAME—SEARCH WARRANT.
   The right to issue a search warrant rests upon facts existing at the time the showing is made for the warrant (Const 1908, art 2, § 10).

5. CRIMINAL LAW—SEARCH AND SEIZURE—PROBABLE CAUSE.
   Claim by defendants, convicted of conspiracy to violate the gaming laws, that items seized following the search of 2 sep-

---

REFERENCES FOR POINTS IN HEADNOTES

[1-5] 47 Am Jur, Searches and Seizures § 21 *et seq.*
[6] 5 Am Jur 2d, Appeal and Error § 545 *et seq.*
[7] 5 Am Jur 2d, Arrest § 24 *et seq.*
[8, 9] 5 Am Jur 2d, Arrest §§ 44-49.
[10] 47 Am Jur, Searches and Seizures § 71.
[11-13] 29 Am Jur 2d, Evidence §§ 556, 614.
Necessity of informing suspect of rights under privilege against self-incrimination, prior to police interrogation. 10 ALR3d 1054.
[14, 15] 29 Am Jur 2d, Evidence § 877.
[16] 16 Am Jur 2d, Conspiracy § 34.

arate premises pursuant to search warrants were inadmissible in evidence *held*, without merit, where the warrants were issued by a magistrate based upon an affidavit executed by police officers which stated facts and circumstances to show that the illegal activity continued from the date the officers began their initial surveillance to the date the warrant was issued, since the facts and circumstances then presented to the magistrate justified his finding of probable cause and issuance of the search warrant (Const 1908, art 2, § 10; CL 1948, § 750.301 *et seq.*; CLS 1961, § 750.505).

6. SAME—QUESTIONS REVIEWABLE—SEARCHES AND SEIZURES.

Illegality of entry before search and seizure made at premises police had had under surveillance for several months will not be considered on appeal after conviction for conspiracy to violate the gaming laws, where the issue was not raised in the trial court nor included in continuing objection, and decision is not determined to be necessary to prevent manifest injustice (CL 1948, § 769.26).

7. ARREST—WITHOUT WARRANT—STATUTES.

Police officers, by statute, are permitted to make an arrest without warrant upon reasonable cause to believe that a felony has been committed and that the person arrested has committed it (CL 1948, § 764.15).

8. SAME—WITHOUT WARRANT—PROBABLE CAUSE.

The existence of probable cause to make an arrest without a warrant depends in every case upon the peculiar circumstances confronting the investigating officer, and a review of the legality thereof is limited to the question of whether a man of reasonable prudence and caution would determine that the person arrested has committed a felony (CL 1948, § 764.15).

9. SAME—ARREST—VALIDITY OF ARREST.

Claim by defendants, convicted of conspiracy to violate the gaming laws, that their arrest without a warrant was invalid *held*, without merit, where the arrests were made after a substantial period of surveillance which resulted in information that would cause a man of reasonable prudence and caution to believe that defendants had been and were committing a felony (CL 1948, § 750.301 *et seq.*; CLS 1961, § 750.505; CL 1948, § 764.15).

10. SAME—SEARCH AND SEIZURE—CONSTITUTIONAL LAW.

Claim by defendants, convicted of conspiracy to violate the gaming laws, that searches of their persons, homes, and auto-

mobiles, made incident to their arrest without a warrant, and the seizure of certain gambling paraphernalia pursuant thereto, were unreasonable and unconstitutional *held,* without merit, where the searches in question were consented to by defendants (CL 1948, § 750.301 *et seq.;* CLS 1961, § 750.505).

11. CRIMINAL LAW—CONSTITUTIONAL LAW—CONFESSIONS—EVIDENCE —ADMISSIBILITY.

The rule prohibiting the introduction into evidence of statements obtained from an accused after he has requested and been denied the opportunity to consult with an attorney applies only where there has been a request for counsel and a denial thereof.

12. SAME — CONSTITUTIONAL LAW — STATEMENTS — EVIDENCE — ADMISSIBILITY.

The rule prohibiting the introduction into evidence of incriminating statements or confessions made by an accused to officers investigating a crime, when the accused has not been first warned of his constitutional rights to an attorney and to remain silent, applies only to cases where trial commenced after June 13, 1966.

13. SAME—CONSTITUTIONAL LAW—ADMISSIONS—EVIDENCE—ADMISSIBILITY.

Claim by defendants, convicted of conspiracy to violate the gaming laws, that the trial court committed reversible error in admitting into evidence certain incriminating statements made by defendants to police officers at the time of their arrest, and before they were advised of their constitutional rights, *held,* without merit, where defendants had never requested or been denied the right to counsel, and their trials commenced prior to June, 1966, since the rule excluding the introduction of such incriminating statements applies only to trials which commenced after June 13, 1966 (CL 1948, § 750.301 *et seq.;* CLS 1961, § 750.505).

14. EVIDENCE—PAST RECOLLECTION RECORDED—ADMISSIBILITY.

A memorandum made by a witness at the time of a particular event may be admitted into evidence if the witness testifies that it was true when made, that he has no present remembrance, and that his recollection is not refreshed by his own memorandum.

15. CRIMINAL LAW—EVIDENCE—PAST RECOLLECTION RECORDED—ADMISSIBILITY.

Claim by defendants, convicted of conspiracy to violate the gaming laws, that the trial court committed reversible error in admitting into evidence typewritten memoranda made by

police officers during their investigation of the crime in ques-
tion *held,* without merit, where the officers first testified that
(1) the typewritten memoranda were accurately prepared each
day from notes which they made at the scene of their observa-
tions and from their memory of what occurred that day, (2)
that they could not, at the time of trial, recall the details of
their observations, (3) that the memoranda would not re-
fresh recollection, and (4) that the original handwritten notes
were destroyed (CL 1948, § 750.301 *et seq.;* CLS 1961, § 750-
.505).

16. Conspiracy—Violation of Gaming Laws—Evidence.

Claim by defendants, convicted of conspiracy to violate the gam-
ing laws, that the trial court erred in failing to direct a
verdict of not guilty *held,* without merit, where a re-
view of the record reveals that the evidence received im-
plicated each defendant in the conspiracy and no evidence was
offered on behalf of any defendant, there being sufficient com-
petent evidence to sustain the verdict (CL 1948, § 750.301 *et
seq.;* CLS 1961, § 750.505).

Appeal from Jackson; Dalton (John C.), J. Sub-
mitted Division 2 December 9, 1966, at Lansing.
(Docket No. 2,000.)    Decided November 27, 1967.

Edward Ray Bracy, Wilbert Thomas, Willie Sims,
Willie Smith, Mary Ella Thomas, and Riley Bell
were convicted of conspiring to violate the gaming
laws.    Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, *James G. Fleming,*
Prosecuting Attorney, and *Bruce A. Barton,* Chief
Assistant Prosecuting Attorney, for the people.

*Stuart J. Dunnings, Jr. (Benjamin F. Gibson,* of
counsel), for defendant.

J. H. Gillis, J.   Defendants Edward Ray Bracy,[1]
Wilbert Thomas, Willie Sims, Willie Smith, Mary

---

[1] This defendant's name has been spelled both "Bracy" and "Bracey"
in the lower court record. He died during pendency of this appeal.

Ella Thomas, and Riley Bell appeal their January 12, 1965 conviction by the court, sitting without a jury, of conspiracy to violate the gaming laws of the State of Michigan.[2]

On or about March 31, 1960, certain members of the Michigan State police racket squad commenced a surveillance of the actions and movements of certain persons in the city of Jackson, Michigan. On July 8, 1960, pursuant to search warrants issued by a justice of the peace, the Michigan State police and the Jackson city police raided two premises located in the city of Jackson. Mutuel slips, betting slips, money, and other items alleged by the police to have been used for gaming purposes were seized. All of the defendants were arrested within a short time after the execution of the search warrants.

On December 30, 1960, the defendants filed a motion to suppress the evidence and quash the information alleging that one of the search warrants and the accompanying affidavit was insufficient and void and that, therefore, the evidence seized should be suppressed. On May 29, 1961, the trial court denied the motion to suppress the evidence and to quash the information. On April 4, 1962, application for leave to appeal the denial of the above motion was filed in the Michigan Supreme Court. On September 3, 1964, the Michigan Supreme Court entered an order as follows:

"That the application for leave to appeal be, and the same is hereby, DENIED, for the reasons that it appears that the search and seizure complained of were legal and constitutional, and that nothing further of moment could be added if an appeal were granted."

---

[2] CL 1948, § 750.301 et seq. (Stat Ann 1954 Rev § 28.533 et seq.); CLS 1961, § 750.505 (Stat Ann 1954 Rev § 28.773).

On December 15, 1964, trial commenced before
the circuit court and testimony was concluded the
following day.  By opinion dated January 12, 1965,
the court found each of the defendants guilty as
charged.  On February 19, 1965, each of the defend-
ants was sentenced.

## Search and Seizure

The first five issues raised on appeal concern the
validity of the search and seizure that occurred on
July 8, 1960.  The affidavit submitted to the justice
of the peace in support of the search warrants here
questioned is quite lengthy and consists of approxi-
mately 52 pages of alleged observations by members
of the State police racket squad.

Basically, the subjects of these observations were
defendants Smith, Sims, and Wilbert Thomas.  The
typewritten notes of the police officers disclose that
the three defendants made numerous short visits
to houses located within the city of Jackson.  Often
the observations commenced and ended at 704-1/2 S.
Milwaukee or 311 Biddle street in Jackson.  These
observations also disclosed that these defendants
normally met immediately prior to 2 p. m. at either
the Milwaukee or Biddle street addresses.  After
several minutes this rendezvous would terminate
and the surveillance would be discontinued.

On several occasions, not immediately prior to
the arrest, defendants were observed carrying
brown paper bags.  Defendant Sims was once ob-
served with his "pockets bulging" and on June 17,
1960, Sims was handed a yellow mutuel slip by an
unidentified man.

Michigan law states that a magistrate may not
issue a search warrant "without probable cause, sup-
ported by oath or affirmation."[3]  The magistrate is

---

[3] Const 1908, art 2, § 10.  See, currently, Const 1963, art 1, § 11.

required to find probable cause "from the facts or circumstances presented to him under oath or affirmation. Mere affirmance of belief or suspicion is not enough." *Aguilar* v. *Texas* (1964), 378 US 108 (84 S Ct 1509, 12 L ed 2d 723), citing *Nathanson* v. *United States* (1933), 290 US 41 (54 S Ct 11, 78 L ed 159).

While probable cause is difficult to define, it is clear that the term "means less than evidence which would justify condemnation." *United States* v. *Ventresca* (1965), 380 US 102 (85 S Ct 741, 13 L ed 2d 684). In the instant case the facts and circumstances as set forth in the affidavits form a sufficient basis for the issuance of the warrant.

In so holding we are not unmindful of the Michigan law which states:

" 'The right to issue a search warrant rests upon facts existing at the time the showing is made for the warrant.' " *People* v. *Wright* (1962), 367 Mich 611, 613, citing *People* v. *Chippewa Circuit Judge* (1924), 226 Mich 326, 328.

The present case is readily distinguishable from the above cited cases in that the magistrate was presented with an affidavit which recited facts to show the alleged illegal activity continued from the date of initial surveillance to the date of issuance of the warrant.

The search warrants for 704–1/2 S. Milwaukee and 311 Biddle street were executed simultaneously. The search of the Milwaukee address uncovered "dream books, playing cards, and a copy of race results with the winning mutuel slips marked." None of the defendants named herein were present at this address.

The raid at 311 Biddle street was considerably more productive. Detective Cluver testified that

he was the first to approach 311 Biddle, although Sergeant Avery held the search warrant. Detective Cluver knocked once and heard a voice from the inside. He knocked again, stated it was the police, and when he received no answer, he attempted to open the door. The door was locked and the detective subsequently gained entrance by forcing it open.

As the officers entered the dining room they observed defendants Bracy, Wilbert, Thomas and Mrs. Thomas at the dining room table. On the table was a telephone, an adding machine, and several mutuel slips. The officers also found a pad with several horse bets, numerology sheets, racing forms, a strongbox containing 396 post-dated mutuel slips, other mutuel slips, a telephone bill for $292 and some cash. At the time of this raid, defendant Wilbert Thomas made an incriminating statement which was admitted into evidence.

When the trial began defense counsel raised a continuing objection to the items seized during the raid "because the raid was illegal and improper, based upon our claim of a void affidavit and search warrant."

On appeal, it is claimed that the entry prior to the search and seizure at 311 Biddle was illegal and therefore the search and seizure were illegal. However, this issue was not raised in the trial court nor was it included in the continuing objection and will not be considered by this Court "unless necessary to prevent manifest injustice."[4] *People* v. *McLaughlin* (1966), 3 Mich App 391, 394. The facts presented to this Court do not indicate that manifest injustice would result by our decision not to consider this issue raised for the first time on appeal.

---

4 See CL 1948, § 769.26 (Stat Ann 1954 Rev § 28.1096).—REPORTER.

*Arrest*

Defendants Wilbert Thomas, Mary Ella Thomas and Bracy were arrested at the time of the raid at 311 Biddle. As we have already sustained the search warrants and the search and seizure pursuant to these warrants, we find nothing erroneous in the arrest of these defendants.

Defendants Sims, Smith and Bell were arrested and searched without warrants. These arrests occurred the same day as the raids and each defendant had been under surveillance.

Defendant Sims was placed under arrest at his residence by a State police officer acting under instructions of his superior. Sims responded to a knock at his door and was advised that he was under arrest for conspiracy to violate the state gaming laws. At this time Sims consented to a search of the premises. The subsequent search disclosed cash on a table, mutuel slips, bet slips, and numbers books. When asked where the money came from, Sims told the officer "that is what he had picked up for the numbers that day." The arresting officer testified that he did not advise Sims of his right to an attorney or that anything he said could be used against him. The officer also stated that at no time did Sims request an attorney.

Defendant Smith was placed under arrest by another State police officer who had taken part in the surveillance. Smith's wallet, which was taken from him, contained current dated bet slips for July 8, 1960. At the time of the arrest, Smith, in response to questioning, stated that he had been in the numbers racket for six weeks. Smith was not informed of his constitutional rights although there is nothing to show that he requested and was denied counsel.

The same officer that arrested Smith also arrested defendant Bell at his residence. Bell consented to

a search of his person and automobile, the latter disclosing a mutuels pad with a current dated mutuel slip. Bell was not advised of his constitutional rights and he told the officer he was taking over Willie Smith's numbers route. Again, there was no testimony that defendant requested and was denied counsel.

CL 1948, § 764.15 (Stat Ann 1954 Rev § 28.874) permits peace officers to make an arrest without a warrant upon reasonable cause to believe that a felony has been committed and that such person has committed it. The existence of probable cause "depends in every case upon the peculiar circumstances confronting the arresting officer. * * * He makes his determination, and we review it, not as a legal scholar determines the existence of consideration in support of a promise, but as a man of reasonable prudence and caution would determine whether the person arrested has committed a felony." *People v. Harper* (1962), 365 Mich 494, 501. We find nothing in the above standard that would invalidate the arrest of defendants Sims, Smith and Bell. We likewise find no basis for defendants' contention that the searches and seizures subsequent to these arrests were unreasonable within the constitutional meaning of that term.

### Constitutional Right to an Attorney and Right to Remain Silent

Defendants' next contention is that the trial court committed reversible error by the admission into evidence of their incriminating statements. Defendants cite *Escobedo* v. *Illinois* (1964), 378 US 478 (84 S Ct 1758, 12 L ed 2d 977), and contend that this decision is applicable since they were not advised of their right to an attorney and right to remain silent. However, this Court has consistently held that *Esco-*

*bedo* is limited to the situation where an accused has requested to see his attorney and this request has been ignored. See *People* v. *Castelli* (1967), 7 Mich App 1, and cases cited therein. As the trial in the instant case occurred in 1964, the recent decision of *Miranda* v. *Arizona* (1966), 384 US 436 (86 S Ct 1602, 16 L ed 2d 694) has no application and therefore these statements were properly received into evidence.

## Past Recollection Recorded

At trial the court permitted the officers who conducted the surveillance to read from typewritten memoranda. These writings set forth the detailed activities of defendants from commencement of surveillance to arrest.

Prior to reading the memoranda the officers testified: (1) That the typewritten memoranda were accurately prepared each day from notes which they made at the scene of the observation and from their memory of what occurred that day. (2) That they could not, at the time of trial, recall the details of their observations and that the memoranda would not refresh their recollection. (3) That the original handwritten notes were destroyed.

Defendants contend that by allowing the officers to read the memoranda they were denied their constitutional right of confrontation of witnesses. This very issue was presented in *People* v. *Hobson* (1963), 369 Mich 189. In *Hobson,* by split decision the Court allowed the memoranda to be read.

Justice DETHMERS, in writing for affirmance, stated at pp 191, 192, quoting from *Rice* v. *Fidelity & Casualty Company of New York* (1930), 250 Mich 398:

" 'This Court has held that a memorandum made by a witness, at the time, if the witness has no pres-

ent remembrance, and his recollection is not re-
freshed by his *own* memorandum, may, if the wit-
ness testifies it was true when made, be admitted
in evidence.' "

We have followed the controlling opinion in *Hob-
son*[5] on prior occasion and see no compelling reason
why we should not follow it in this case.

### Sufficiency of Evidence

The last allegation of error is that the court erred
in refusing to direct a verdict of not guilty. The
evidence received at trial implicated each defendant
in the conspiracy and no evidence was offered on
behalf of any defendant. After a thorough review
of the record, we find that there was sufficient com-
petent evidence presented at the trial to sustain the
verdict.

Judgment affirmed.

T. G. KAVANAGH, P. J., and McGREGOR, J., con-
curred.

---

[5] *People* v. *Blakes* (1966), 4 Mich App 13.